Wytheville.

## THE CAPE CHARLES BANK, INC., ETC., V. FARMERS MUTUAL EXCHANGE, ETC., INC., AND OTHERS.

June 14, 1917.

Absent, Burks, J.

1. BILLS AND NOTES—*Extension of Time of Payment by Holder.*— By the common law and the negotiable instruments law, Code of 1904, section 2841, sub-section 120, sub-division 6, a party secondarily liable on a negotiable instrument is released, "By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved."

2. BILLS AND NOTES—*Extension of Time of Payment—Burden of Proof.*—Where the defense to an action on a negotiable instrument is a release by such an agreement, the burden of proving the existence of the agreement rests upon the defendant.

3. BILLS AND NOTES—*Extension of Time of Payment by Holder— What Constitutes Such an Agreement.*—The agreement in question contemplated by the above statute and by the rule at common law which it enacts, need not be express. It may be implied from acts, declarations, facts and circumstances. Its form is immaterial. It may be by parol as well as in writing. It must, however, be a binding contract, enforceable at law or in equity. It must be supported by a valuable consideration. It must be for a definite period, however short. When implied in law it is still a contract in fact and not in law, and hence an actual meeting of the minds of the contracting parties is essential to such an agreement, to bring it within the operation of the statute and common law rule.

4. BILLS AND NOTES—*Extension of Time of Payment by Holder— Existence of Agreement a Question of Law or Fact.*—In every case where the existence of an agreement such as mentioned in the statute is relied on by a person secondarily liable as

a discharge of such liability, the question of the existence of such an agreement is a mixed question of law and fact; and when the mutual agreement is to be gathered from the acts of the parties, their situation and the surrounding circumstances, it is for the jury to determine what were the intention and understanding upon which the minds of the parties met. If the facts and circumstances are all ascertained, whether they constitute such an agreement is, of course, a question of law for the court.

5. BILLS AND NOTES—*Extension of Time of Payment by Holder—Payment of Interest in Advance.*—While payment and acceptance of interest in advance is not in itself an agreement to extend the time of payment of the obligation on which the interest is paid, yet it is evidence tending to prove the existence of such an agreement, and in the absence of any other evidence bearing upon the negative of the question, such payment and acceptance of interest affords *prima facie* evidence of the existence of such an agreement. However, when there is other evidence such as the acts, situation of and circumstances which surround the parties, but slight evidence to the contrary will rebut the *prima facie* case made by the evidence of payment and acceptance of interest in advance.

6. BILLS AND NOTES—*Extension of Time of Payment by Holder—Payment of Interest in Advance—Case at Bar.*—The instant case was not submitted on the bare facts of payment and acceptance of interest in advance. All the officers of the plaintiff and its assignor bank testified in rebuttal of the *prima facie* case which such payment and acceptance might otherwise have made out. This and the evidence as to the situation of the parties, their relations to each other and the surrounding circumstances warranted the jury in finding that there was not in fact any meeting of the minds of the maker and holders of the note sued on upon any agreement to extend the time of payment or to postpone the right to enforce the note sued on.

Error to a judgment of the Circuit Court of Northampton county, in an action of debt. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

This is an action of debt on a certain negotiable note for $8,000.00 by the plaintiff in error, the assignee and holder thereof for value against the maker and certain endorsers thereof, the latter being the defendants in error. The maker of the note was the Farmers Mutual Exchange, etc., Inc., a mutual company of which the defendant endorsers were stockholders. Its business was the marketing of the farm products of its stockholders, selling, accounting and paying over to them the proceeds of sales of such products. It had no assets except the capital provided by the money borrowed upon said note and other like notes. The note sued on became due and payable November 10, 1911, but nothing was then paid thereon. Subsequently, payments were made thereon by the maker and entries of credits therefor were entered on the back of said note, and on a collateral note pinned thereto, as follows:

"4-18-12 Int. paid to 3-10-12 (160.00)."

"4-26-12 Int. paid to 5-25-12 (100.00)."

"Int. paid to August 28, 1912."

"July 5, 1913, by Pe C. K. $2,000.00."

"July 5, 1913, by Int. $409.33."

There was then left a balance of $6,000.00 and interest thereon from July 5, 1913, unpaid on said note.

Out of the one hundred dollar payment of interest credited on April 26, 1912, above noted, arose the controversy on the merits of this case before us.

As will be noted this was a payment of interest in advance of its accrual. This payment was made by check of said maker of the note sued on, sent to the assignor of plaintiff by mail, accompanied by the following letter:

"L. E. Mumford Banking Co.,

"Cape Charles, Va.

"Gentlemen:

"Replying to your favor of the 24th instant, also Mr.

Powell's conversation to me last P. M. Check herewith enclosed for $100.00, same being interest on note in question.

"Yours very truly,

"(Signed)    Farmers Mutual Exchange,

"C. W."                                    "Secy. and Treas'r."

(This letter was written by Mr. Claude while the secretary and treasurer of the Farmers Mutual Exchange.)

. This letter was received by said assignor of plaintiff on April 26, 1912, the $100.00 accepted, and, by direction of Mr. Powell, the president of said assignor, its bookkeeper entered the credit therefor on the back of said note above noted, to the effect that it credited interest paid thereon to May 25, 1912, practically two months in advance.

Mr. Powell testified in effect that he as president of the assignor of plaintiff, after the note fell due, made repeated demands of the maker for payment; that the letter of such assignor, referred to in the April 25, 1912, letter of said maker of said note, contained, and his conversation also referred to in such letter consisted, merely in urging payment of the note and that no extension of time on the note was asked for by said maker or its secretary and treasurer or promised by him or his company, the said assignor of the note.

There was further testimony tending to show and from which the jury were warranted in finding as facts, that the maker of said note was in failing circumstances when said $100.00 payment was made, but that it was manifest that a suit against it on the note would not have been to the advantage of the holder of the note. That the best business course for such holder was to get such partial payment as it could from the maker from time to time, at least to the extent of preventing the debt from growing larger by accumulation of interest thereon. That a suit on the note would have meant ending the existence of the maker, a

mutual company, in whose continued existence its stockholders, who were for the most part influential business men, were interested. That indeed, a suit on the note would be a suit against such stockholders also, who were endorsers on the note, whom the said assignor, itself a bank of the same community, would hesitate to offend. That the endorsers on the note were of such ample financial worth as to make the debt absolutely safe and a desirable loan for a bank to hold if the interest was kept paid up. That, therefore, the situation of the parties and surrounding circumstances, made it manifest that suit on the note was not to be apprehended as long as interest was kept paid up and none of the endorsers themselves required it. That hence there was no need or thought on the part of said maker to stipulate for or to obtain any agreement on the part of the holder of the note to extend the time of payment. That, hence, the payment of the $100.00 interest was consistent with the idea that its sole purpose was to comply with the demand of payment aforesaid as far as it was then in the power of the maker of the note, with the purpose of preventing interest accumulating on it so as to make it against good banking rules for the bank, its holder, to hold such note, which the maker naturally expected it would otherwise do for the business reasons above suggested, without any agreement so to do.

The further material facts on the merits of the case are as follows:

The evidence for the plaintiff shows affirmatively that neither it nor the assignor of the note sued on was ever asked to agree to any extension of time of payment of such note; that neither ever intended to make any such agreement, or knowingly did any act to have that effect, and that neither of them ever in fact made any such agreement, unless the acceptance of the interest in advance as aforesaid had that effect.

No endorser on said note requested the plaintiff to collect the note, until August 18, 1913, when fifteen of the twenty-seven endorsers thereof requested plaintiff to institute suit against all of the endorsers, if the note was not paid on or before September 1, 1913. The maker of the note had then ceased to do business, as it seems from the record. The suit was thereafter accordingly instituted. After the institution of the suit the said maker was declared a bankrupt.

The endorsers of the note had no knowledge of the payment and acceptance aforesaid of said interest in advance until after the suit was brought.

### SUMMARY OF FACTS.

As bearing on the one question in controversy on the merits of the case, the facts do not consist merely of the payment by the maker of a note of interest thereon in advance and the acceptance thereof by the holder of the note. There are other facts and circumstances, some of which are above indicated, bearing on the inference to be drawn or the implication to be made, if any, from such payment and acceptance, with respect to the existence or non-existence of an agreement on the part of the holder of said note to extend the time of payment thereof.

Upon the first trial of the case the jury rendered a verdict in favor of the plaintiff against the defendant endorsers for said balance of $6,000.00 with interest thereon from July 5, 1913. Thereupon at the same term on motion of the said defendant the trial court set aside such verdict and granted the defendant a new trial. By subsequent proceedings, not necessary to be mentioned in detail, the case is now before us for the determination of whether there was error in said action of the court below in setting aside the said verdict and granting a new trial. In the view we take of the case

such determination involves the consideration of only one question in controversy on the merits of the case.

*J. Brooks Mapp,* for the plaintiff in error.

*Benj. T. Gunter, Jr.,* and *S. J. Turlington,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

Upon the merits of the case the defendants rely upon subdivision 6 of sub-section 120 of section 2841 of the negotiable instruments law, Pollard's Code of Va. 1904, which provides with respect to what will release parties secondarily liable on negotiable instruments, as follows: That such parties will be released—

"By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved."

This rule was the same at common law (3 R. C. L. sec. 506; *Baird* v. *Rice,* 1 Call (5 Va.) 18, 1 Am. Dec. 497; 24 Am. & Eng. Encyc. of Law (1894) 822 et seq.; *Alcock* v. *Hill,* 4 Leigh (31 Va.) 626; 3 R. C. L. sec. 505; See also 2 Daniel on Negotiable Instruments (6th ed.), sec. 1312; hence the statute does not aid us in the application of such rule to the question in controversy on the merits upon which the instant case turns. That question is as follows:

1. Was there, in the case at bar, any agreement binding upon the plaintiff, or its assignor, to extend the time of payment or to postpone the right to enforce the note sued on?

This is a matter of defense alleged by the defendants and the burden of proving the existence of such an agreement rested upon them. 32 Cyc. 213.

The agreement in question contemplated by the above quoted statute and by the rule at common law which it enacts, need not be express. It may be implied from acts, declarations, facts and circumstances (32 Cyc. 198; Crawford's Anno. Neg. Inst. Law, p. 85, note). Its form is immaterial. It may be by parol as well as in writing (32 Cyc. 198; 3 R. C. L. sec. 507). It must, however, be a binding contract (32 Cyc. 197; *Vaughan* v. *Vernon*, 82 Ark. 28, 100 S. W. 92), enforceable at law or in equity. 32 Cyc. 198. Also see *Armistead* v. *Ward*, 2 Pat. & H. (Va.) 504 for dictum of this court; *Coffman* v. *Moore's Ex'ors*, 29 Gratt. (70 Va.) 244; and see opinion of Kent, Chancellor, 8 Am. Dec. 424 et seq., and cases cited. It must be supported by a valuable consideration. *Oberndorf* v. *Bank*, 31 Md. 126, 1 Am. Rep. 31; 32 Cyc. 199; note of Prof. Lile, 4 Va. Law Reg. 262; note 11 Am. Dec. 590. It must be for a definite period, however short. *Reese* v. *Barrington*, 2 White & Tudor's Eq. Cas. pt. 2, p. 312; 32 Cyc. 202; 3 R. C. L., sec. 507. When implied in law it is still a contract in fact and not in law (*Guerguin* v. *Boone*, 33 Tex. Civ. App. 622, 77 S. W. 630), and hence an actual meeting of the minds of the contracting parties is essential to such an agreement, to bring it within the operation of the statute and common law rule which the latter has enacted.

In every case where the existence of an agreement such as mentioned in said statute is relied on by a person secondarily liable as a discharge of such liability the question of the existence of such an agreement is a mixed question of law and fact; and when the mutual agreement is to be gathered from the acts of the parties, their situation and the surrounding circumstances, it is for the jury to determine what were the intention and understanding upon

which the minds of the parties met. *Brooks* v. *Wright,* 13
Allen (Mass.) 72. If the facts and circumstances are all
ascertained, whether they constitute such an agreement is,
of course, a question of law for the court. (*Idem.*)

Whether such an agreement exists, is the ultimate ques-
tion in every such case.

Where such an agreement is not express, but is sought to
be implied from the acts of the parties, their situation and
the surrounding circumstances, the case is simple or com-
plex in proportion as we find present a few, or a number of
acts, and as we find those acts unaffected or affected by the
situation of the parties and the surrounding circumstances.

If there be present in a case the bare facts of the pay-
ment and acceptance of interest in advance, the evidence be-
ing silent as to the actual intention of the parties, and there
being nothing in their situation or in the surrounding cir-
circumstances to negative the fact that the minds of the
parties met on an agreement to extend the time of payment
of the obligation on which interest in advance is paid, the
authorities are in conflict as to whether such mere pay-
ment and acceptance of interest in advance is sufficient evi-
dence of the existence of such an agreement. The weight
of authority and reason seems to be in favor of the proposi-
tion that while payment and acceptance of interest in ad-
vance is not in itself an agreement to extend the time of
payment of the obligation on which the interest is paid, yet
it is evidence tending to prove the existence of such an
agreement, and in the absence of any other evidence bear-
ing upon the negative of the question, such payment and
acceptance of interest affords *prima facie* evidence of the
existence of such an agreement. (*Armistead* v. *Ward,* 2
Pat. & H. [Va.] 504 for dictum of this court; 5 Rob. Prac.
787; 32 Cyc. 208 note 5 citing cases which show that such
is the rule prevailing in Georgia, Indiana, New Hampshire,
North Carolina, Ohio, South Carolina, Texas, Wisconsin

and Wyoming. The same rule seems to obtain in Washington, see *Bank* v. *Jeffs,* 18 Wash. 135, 51 Pac. 348, 63 Am. St. Rep. 875, and in Connecticut, *Skelly* v. *Bristol Savings Bank,* 63 Conn. 83, 26 Atl. 474, 19 L. R. A. 599. 38 Am. St. Rep. 340). A contrary view, namely, that the payment and acceptance of interest in advance are not circumstances sufficient in themselves to afford even *prima facie* evidence of an agreement such as we have under consideration, seems to be taken of the subject in the State of Massachusetts. *Oxford Bank* v. *Lewis,* 8 Pick. (Mass.) 458; *Blackstone Bank* v. *Hill,* 10 Pick. (Mass.) 129; *Haddenville Savings Bank* v. *Parsons,* 138 Mass. 53; Maine: *Mariner's Bank* v. *Abbott,* 28 Me. 280; *Freeman's Bank* v. *Rollins,* 13 Me. 202; Missouri: *Hosea* v. *Rowley,* 57 Mo. 357; California: *Hellier* v. *Russell,* 136 Cal. 143, 68 Pac. 581. See also note 81 to section 1317, 2 Daniel on Neg. Instr., for cases on this subject.

However, even in those jurisdictions where the effect is given above mentioned to the payment and acceptance of interest in advance as *prima facie* evidence, when there is other evidence such as the acts, situation of and circumstances which surround the parties, but slight evidence to the contrary will rebut the *prima facie* case made by the evidence of payment and acceptance of interest in advance. For instance, in Ohio, where the *prima facie* rule prevails referred to, in *Denison University* v. *Mannina,* 65 O. St. 138, 61 N. E. 706, the court in its opinion said:

"Under the view taken of preceding questions, it is possible to decide the case without considering the effect of the evidence respecting the claim of the extention of time. Yet the question is made upon record, and may properly receive attention. The claim rests wholly on the effect of the endorsement of interest of date April 15, 1891, which is; 'Paid six months' interest, to April 30, 1891, $210.00.' It is urged that this implies necessarily that there was an agree-

ment to extend the payment for a definite period, to-wit, 15 days. But does it? Such endorsements have been the subject of controversy in many cases. It is observed in some opinions that it is *prima facie* evidence of an extension. We know of no case where it is held to be conclusive. While, as a matter of law, the length of time is not important, yet it strikes one as improbable that there should be negotiation between parties situated as these persons were for an extension of only 15 days, and we look, therefore, to their acts and conversation to discover what was in fact said and done. The payment was made by George A. Slaght (a witness for the defendants at the trial) to Mr. Crawford. The witness does not say a word about a request for an extension, nor an agreement to extend. He does not recall the exact words, but says that he went into the bank where Mr. Crawford was, and made him understand that he wished to pay interest on that note, that he paid it, took a receipt for it, and went his way. Mr. Crawford, when called shortly after by the plaintiff, testified that George Slaght made that payment of interest; that Slaght said he had traded for the property, and beyond that nothing was said. He further testified positively that he was never asked to extend the time nor receive interest in advance. There is no denial of this statement, although the defendant's witnesses were presumably present, or at least within reach of process. Any possible inference favorable to defendants from that endorsement was thus effectually rebutted, and it left the conclusion that the payment of interest was made at the time as a matter of convenience to Slaght, and without any understanding at all that an extension of time for the payment of the principal had been had, or even requested."

So in the instant case it was not submitted on the bare facts of payment and acceptance of interest in advance. All the officers of the plaintiff and its assignor bank testified in rebuttal of the *prima facie* case which such payment and

acceptance might otherwise have made out. The officer of the maker of the note who made the payment in question was examined as a witness. This and the evidence as to the situation of the parties, their relations to each other and the surrounding circumstances warranted the jury in finding as they did, that there was not in fact any meeting of the minds of the maker and holders of the note sued on upon any agreement such as alleged by the defendant endorsers.

As said by this court in *Calloway's Adm'r.* v. *Price,* 32 Gratt. (73 Va.) 1, in relation to the question of whether the taking of collateral security by the holder of a debt evidenced an agreement to extend the time of payment thereof so as to operate as a release of the surety, in the opinion by Staples, J.:

"In some of the cases it is held that taking the negotiable security creates a conclusive presumption of law of an agreement to suspend. In other cases it is held, and with better reason, it is simply a question of intention."

So in the case at bar it was a question of fact for the jury to ascertain with what intention the interest was paid and accepted in advance. The latter, in the absence of other evidence bearing upon such intention, would have been sufficient evidence that the intention was to extend the time of payment of the debt. But in the presence of the other evidence aforesaid the question of the existence of such intention was for the jury.

Further, as above stated, there was sufficient evidence to warrant the jury in finding, as they did, that no such intention existed.

We are, therefore, of opinion that the action of the court below in setting aside the verdict of the jury was erroneous.

This being our conclusion on the merits of the case it becomes unnecessary for us to review the action of the trial court with respect to allowing a new trial without the

prepayment of the costs of the former trial, etc., except to say that we are of opinion that the defendants in error should bear and pay the costs of all of the trials in the court below as well as the costs in this court.

For the reasons stated above we are of opinion to reverse the judgment complained of and this court will enter such judgment as the court below should have entered.

*Reversed.*