# Old Colony Trust & Savings Bank v. Sherrill-King Mill & Lumber Company.

### (Decided May 14, 1920.)

## Appeal from McCracken Circuit Court.

1. Trial—Burden of Proof.—In a suit on notes where the execution and delivery were admitted and certain affirmative defenses are set up in the answer the burden of proof is on the defendant and the court did not err in so placing the burden.

2. Appeal and Error—Witnesses—Number of—Setting Aside Verdict.—Where the witnesses for one party greatly outnumber the others, this does not of itself show that the verdict is flagrantly against the evidence; witnesses are to be weighed and not counted and verdicts will not be set aside on mere numerical evidence alone.

3. Appeal and Error—Question for Jury.—In a suit involving the effect of an agreement as to the disposition of notes taken in the purchase of lumber the evidence being conflicting the issue was for the jury and not the court.

WHEELER & HUGHES for appellant.

MOCQUOT, BERRY & REED for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Schultz & Cowen Co., of Chicago, Ills. (hereinafter referred to as the company), in 1913, asked the Sherrill-King Mill & Lumber Co. (for brevity called the appellee herein), for prices on lumber. Not being advised as to applicant's financial standing, appellee made inquiry of appellant (referred to hereinafter as the bank), and was told by one of the bank's officers they considered the account good for $2,000.00. Appellee sold a bill of goods to the company amounting to $804.07, taking their notes in payment therefor. The notes were not paid at maturity. In an endeavor to collect the notes appellee sent a representative to Chicago to confer with the company and the bank. As to what occurred on this visit is told by H. V. Sherrill, testifying for appellee. In behalf of the bank we have the testimony of its former president and cashier, and H. J. Reinhard. The latter was the Chicago agent of the Colfax Hardwood Lumber Co., which secured a portion of the order hereinabove referred to. Sherrill says that failing to get any satisfaction from the company, he, in company with Reinhard, called on the bank and were told by its presi-

dent and cashier that the bank held a blanket mortgage on all the property of the company; that if the witness could get the company to execute its notes, endorsed by W. W. and J. A. Schultz and appellee the bank would give them the money on the notes, as the bank's indebtedness did not exceed $7,000.00, while the assets of the company amounted to approximately $15,000.00. The company refused to execute these notes, and when the bank was advised of this its president said they would see to the securing of the notes, which was done. The notes were duly endorsed and turned over to the bank and the proceeds deposited to the credit of appellee. Witness says the bank's officers were very anxious that he not take legal steps to enforce the collection of the notes; they asked him not to stir up anything. Witnesses for the bank say they did not hold a mortgage on the property but a bill of sale therefor, which the company had executed to secure an indebtedness to the bank of $11,000.00; that when the condition of the account was explained to them by Sherrill the bank agreed to discount the notes, provided the proceeds would be placed on deposit at the bank until after the maturity of the notes and if there was not sufficient money to liquidate the bank's indebtedness they could charge the notes back to this deposit account. The notes were later presented duly endorsed and the proceeds deposited to the account of appellee and remained in the bank for some time, but thereafter, contrary to the agreement, said proceeds were withdrawn by two checks signed by appellee. The bill of sale dated May 17, 1913, was never recorded.

In this suit to recover on said notes the endorsement and delivery of the notes were admitted, but as a defense appellee set up facts substantially as testified by Sherrill, that the agreement on the part of the bank to take care of the notes was made for the purpose of assisting the company and to prevent appellee from taking legal action to secure its indebtedness. It was further alleged that at the time the notes were endorsed and delivered to the bank the company was solvent and payment could have been coerced, but that appellee withheld any proceedings against the company on the representation and agreement of the bank to take care of the notes; that the bank suffered the lumber to be sacrificed and the assets of the company to be dissipated,

with the result that a sufficient amount was not realized from a sale of the assets to take care of the notes.

The case was tried before a jury which rendered a verdict in favor of appellee, defendant below, and this appeal followed. On motion of appellee it was awarded the burden of proof over the objection of the bank, and this alleged error of the court is urged as a ground for reversal. The burden being on the party who would be defeated if no evidence was given on either side (Civil Code 526) the court properly sustained the motion in this regard. Under the state of pleadings, had no proof been offered, the verdict would have favored the bank.

The real controversy here grows out of the agreement between the parties at or about the time the notes were discounted. In point of numbers, the advantage was with the bank. Mere superiority in this respect is not sufficient; were the rule otherwise the determination of lawsuits would be dependent upon skill or ability of litigants to corral persons and not upon the evidence adduced by witnesses. And in which event it would be necessary only that the witnesses be counted. But witnesses are to be weighed not counted. Verdicts will not be set aside on the mere numerical weight of the evidence alone. Where the evidence is conflicting the jury must be the judge of it. Shacklett v. Henderson Co., Savings Bank, 30 R. 1120, 100 S. W. 241; Howard v. Louisville Ry. Co., 32 R. 309, 105 S. W. 932; Cincinnati Tobacco Warehouse Co. v. Garvey, 128 S. W. 86.

It was for the jury to decide what was the agreement. They accepted in this regard the testimony of the witness Sherrill, nor can we say the jury was not authorized in so doing At the time the bank advised appellee the company's account was good for $2,000.00 the company's affairs were in charge of the bank under the bill of sale of May 17, 1913. It did not close the company's business until the fall of 1914, and for aught appearing in the record the proceeds from the lumber shipped by appellee constituted a portion of the funds which entered into the final settlement of the company's assets. It was but natural to protect its debt of $11,00.00; the bank would be desirous of preventing any litigation against the company, or such as would imperil its equity. Appellee says it would have resorted to legal action to enforce its debt had not the bank agreed to take care of the notes. It is singular too that the proceeds were placed in an

open checking account. Had the agreement been as contended by the bank it would seem the money would have been credited to a special, joint or limited account and not subject to check by the depositor.

It is said Sherrill was not in Chicago when the agreement was entered into. Reinhard so testifies. Sherrill says the agreement was made with him. The bank's president refers to the conversation with Sherrill when the subject of the notes was discussed and of the agreement pertaining thereto. Thus the question was for the jury. We do not think the verdict is flagrantly against the evidence as argued by counsel for the bank.

In arguing that it was entitled to a directed verdict counsel doubtless overlooked the following order:

"This day came the parties hereto and by agreement of parties the affirmative allegations contained in the reply are controverted of record by defendant, Sherrill-King Mill & Lumber Co."

The Colfax Hardwood Lumber Co. is not a party to this appeal, the case having been tried on the issues between the bank and the Sherrill-King Mill & Lumber Company.

The instructions properly submitted the issues to the jury and as to these there is no ground for complaint.

For the reasons given herein the judgment is affirmed.