# Bradford v. Union Trust Company et al.

(Decided March 11, 1932.)

DAVID R. CASTLEMAN for appellant.

ROBERT HUBBARD for appellee Union Trust Co.

TRABUE, DOOLAN, HELM & HELM and NELSON HELM for appellee Hubbard.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 19, 1925, appellant, George C. Bradford, sold 55 lots in Villa Rica Park subdivision of Arcadia, Fla., to the Sunniland Development & Investment Corporation, which executed to him a mortgage on the lots for $7,250 to secure the payment of a note for that amount, due September 1, 1926, and bearing interest at the rate of 7 per cent per annum. Bradford afterwards purchased property from the Peace River Realty & Investment Company, and gave this note in part payment. He indorsed the note in blank. On February 24, 1926, T. P. Dickinson, who was in Florida, purchased the note for $7,030 for the Union Trust Company of Glasgow, Ky., of which he was president. He gave two checks for the note which were paid by the Union Trust Company on March 2, 1926. On February 27, 1926, Bradford assigned without recourse to the Peace River Realty & Investment Company the mortgage which had been given to secure the note. On March 3, 1926, the investment

company assigned the mortgage to the Union Trust Company. The note contained a clause waiving presentment, protest, and notice of protest and nonpayment. Shortly after the note came into the trust company's possession, five of the lots covered by the mortgage were sold, and the sum of $1,300 was paid on the note, reducing the principal to $5,950. The trust company released the lien as to these five lots. No further payments were made on the note except interest to September 1, 1926.

When the note was delivered to Bradford, it bore the indorsement of R. F. Saxon, Jr., J. E. Barrentine, and J. H. Brightwell, who were interested in the Sunniland Development & Investment Corporation, and, when it was sold to the Union Trust Company, it was further secured by the indorsements of Charles J. Hubbard, J. Frank Taylor, and J. S. Floyd, who were connected with the Peace River Realty & Investment Company; their indorsements followed the indorsement of Bradford.

On July 24, 1929, the Union Trust Company brought this suit against Charles J. Hubbard and George C. Bradford to recover on the note. Hubbard made no defense, but Bradford defended on the grounds (1) that his indorsement of the note and the lien to secure it was without recourse, and (2) that without his consent the Union Trust Company, after the note became due, entered into a binding agreement with the maker of the note and the other indorsers extending the time of payment to a definite date. On the trial, the lower court instructed the jury peremptorily to find for the plaintiff, and Bradford has appealed.

He insists that either of the defenses asserted by him in the court below is sufficient to exonerate him from liability. Respecting the first defense, it is sufficient to say that appellant's indorsement of the note was unrestricted and his assignment without recourse of the mortgage lien to secure the note was made subsequent to the trust company's purchase of the note. Appellant's second defense was not supported by the evidence. Before a party's secondary liability on a negotiable instrument is discharged by an agreement to extend the time of payment, the agreement for extension of time must be a binding, enforceable contract supported by a valuable consideration and for a definite period. Stokes v. Farmers' & Merchants' Bank of Elkton, 241 Ky. 699, 44 S. W. (2d) 837; Bates' Administrator v. Lockery, 241 Ky. 498, 44

S. W. (2d) 589; Corydon Deposit Bank v. McClure, 140 Ky. 149, 130 S. W. 971, Ann. Cas. 1912B, 484; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 17 L. R. A. (N. S.) 1122.

Subdivision 6 of sec. 3720b-120, Kentucky Statutes, which is but declaratory of the common-law rule, reads:

> "A person secondarily liable on the instrument is discharged: . . . By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved in the original instrument."

The Negotiable Instruments Law of Florida contains a like provision. Comp. Gen. Laws Florida 1927, sec. 6872; Rev. Gen. St. Florida 1920, sec. 4786. In Williams v. Peninsular Grocery Co., 73 Fla. 937, 75 So. 517, 523, it was said:

> "A mere agreement to delay the day of payment without consideration will not bind the holder, and will not discharge the other parties."

Before the note in question matured, the Florida land boom collapsed, and the maker, Sunniland Development & Investment Corporation, being unable to collect the deferred payments on the lots that had been sold by it, was soon out of funds, and unable to meet its obligations. Considerable correspondence ensued between the officers of the maker of the note and the officers of the Union Trust Company, and continued until shortly before the filing of this suit. The trust company at all times insisted upon the payment of the note, but, on the faith of the maker's promises that it would be paid in full if suit was not instituted, failed to take any legal steps to collect it. These promises were based on the belief of the officers of the Sunniland Development & Investment Corporation that conditions in the real estate business in Florida would improve. An effort was made to show that the trust company extended the payment for a definite period in consideration of the payment by the maker of interest semiannually. The burden of proving the agreement for an extension of time is on the indorser alleging it. Old Colony Trust & Savings Bank

712

v. Sherrill-King Mill & Lumber Co., 188 Ky. 177, 221 S. W. 520; Cape Charles Bank v. Farmers' Mutual Exchange, 120 Va. 771, 92 S. E. 918. The evidence fails to show that a binding agreement for an extension of time was made between the maker and the holder, and there is not sufficient evidence to authorize an inference that such an agreement was made. Such an inference is sought to be deduced from letters written by R. F. Saxon, Jr., president of the Sunniland Development & Investment Corporation, to the Union Trust Company in response to letters from the trust company. Saxon was introduced as a witness by appellant, and his letters to the trust company were introduced, but all of the letters of the trust company, which presumably were in his possession, were not produced. The most that can be gathered from the letters appearing in the record that passed between the trust company and the maker of the note is that the latter was seeking delay, and the trust company was merely granting indulgence in this respect. Some propositions for an extension for a definite time were made, but conditions were always attached which were never fulfilled. No agreement was ever made between the holder and the maker which would have prevented the holder from enforcing collection of the note at any time.

"To make an extension of time to a debtor have the effect of exonerating the surety, it is not merely necessary that there should be an agreement which varies the original contract by postponing the time for its performance beyond that fixed originally by the terms of the obligation, but the transaction must involve all the essentials of a binding contract—one that the debtor may enforce against the creditor, either as a cause of action or as a defense effectually tying the hands of the creditor as regards enforcing payment of the debt until the expiration of the agreed time. . . . A mere proposition to give time, and suspend the right to sue, on certain conditions and contingencies, which are not proved to have been complied with, or to have happened, will not discharge the sureties." 21 R. C. L. 1020, 1021.

We find nothing in the correspondence between the trust company and the maker of the note from which an enforceable contract may be inferred by which the former would be prevented from suing on the note at any

time after maturity. Nor does the evidence disclose any acts or statements by any officer authorized to represent the trust company from which such a contract could be inferred. The nearest approach to a definite commitment by the trust company for an extension of time appears in two letters written by its cashier to R. F. Saxon, Jr., on February 17, 1927, and February 23, 1927. Both letters contained an offer of an extension on certain conditions. One of these conditions was the payment of semiannual interest on March 1, 1927. The condition was not accepted by the maker, and the interest was not paid. The minds of the parties never met, and no binding agreement resulted.

It follows that the appellee's motion for a directed verdict in its favor was properly sustained.

Judgment affirmed.