# Staunton

WILLIAM CAWLEY, LIQUIDATOR, ETC. V. H. E. HANES.

September 13, 1939.

Record No. 2101.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*George B. Robey, Leake & Buford* and *Littleton M. Wickham,* for the plaintiff in error.

*Frank L. Ball* and *John C. McCarthy,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is a case in which the trial court set aside the verdict of a jury in favor of a plaintiff, on the grounds that it was not supported by the evidence and was contrary to the law and the evidence, and entered judgment for a defendant. The plaintiff in error, who was the plaintiff below, asks us to reinstate the verdict of the jury and enter judgment thereon for him.

On January 9, 1935, the National Bank of Herndon, Virginia, went into receivership, and one John M. Garrett was appointed liquidator by its receiver, the Federal Deposit Insurance Corporation. He was succeeded in July, 1935, by Wheeler McDougal, who, in turn, was succeeded in March, 1936, by William Cawley, the present plaintiff in error.

At the time of the recivership, the bank held, among its assets, three notes made by the defendant's son, Harold F. Hanes, payable to the bank. On two of them, for $101 and $3,131.28, respectively, Genevieve Hanes, Harold Hanes' wife, was co-maker. The third for $750, dated July 2, 1934, payable five months after date, was made by Harold Hanes alone, and endorsed by H. E. Hanes.

Garrett appears to have taken no affirmative steps towards collecting these obligations until June, 1935, when he learned that, in the previous March, Harold Hanes and his wife had placed a deed of trust on their home in Fairfax

county, Virginia, to secure one William Groome, his wife's father, in the sum of $6,500.

Garrett testified that on June 20, 1935, he wrote H. E. Hanes a letter, advising him that he had been informed of the execution of the deed of trust for $6,500 against the property of Harold Hanes, and calling his attention to the fact that the $750 note, on which he was an endorser, had not been paid, and that unless satisfactory arrangements were made for its payment, it would be placed in the hands of his attorney for collection. H. E. Hanes denied receiving the letter.

Garrett, the liquidator, questioning the good faith and validity of the security preference given by the deed of trust, conferred with Harold Hanes. Under a threat of instituting proceedings in bankruptcy to void the preference, negotiations were entered into between the two for a settlement and adjustment of Harold Hanes' obligations to the bank. It is around the details and terms of the agreement reached between these two parties that the whole controversy centers.

Garrett thought it necessary, under federal statutes, to secure authority from the receiver, the Federal Deposit Insurance Corporation, approved by the Comptroller of the Currency, to effect a binding settlement of any agreement reached. Accordingly, in a letter, not shown in the record, he made a request for such authority and approval. The Comptroller of the Currency, by letter dated July 27, 1935, to the Federal Deposit Insurance Corporation, receiver, authorized the receiver to secure the approval of a court of competent jurisdiction to the acceptance by it of a new note from Harold Hanes for $3,411.70, payable three years after date, secured by a second deed of trust on his home, and the further pledge of the note of $6,500, secured by the first deed of trust on said home, to be assigned to the receiver by the debtor's father-in-law as collateral. The new note for $3,-411.70 covered the amounts due on the notes for $101 and $3,131.28, with accrued interest thereon. This letter recited that since the home property of Harold Hanes cost $13,000,

and should sell for $7,000 under foreclosure proceedings, the receiver by acceptance of the compromise would effect full collection. The receiver was directed, after the court order was obtained, to forward to the Comptroller a copy of the petition to the court and a certified copy of the order obtained thereon.

Garrett first stated that both H. E. Hanes and Harold F. Hanes understood that the note of $750 was not to be considered in the agreement for the settlement of the other two notes. He subsequently confessed that he was somewhat cloudy in his memory of the details of the negotiations, but that he had the "impression" they had been concluded before he left the bank, without reference to the $750 note. Still later he answered the direct question: "Is your testimony at this moment that there was an extension or not of the $750 note, or that you don't know?," by saying, "I don't know whether it was or not but if there was an extension the endorser of the note knew of the arrangements."

Before the agreement, whatever its terms were, was consummated by the approval of the circuit court, McDougal succeeded Garrett as liquidator. Finding the three notes of Harold F. Hanes in his possession, he took up the question of their payment with the debtor personally. He had no personal conference or correspondence with H. E. Hanes, the defendant, with reference either to the $750 note, or to the court proceedings next mentioned.

Thereafter, in November, 1935, McDougal filed a petition in the Circuit Court of Fairfax county, Virginia, in the name of the Federal Deposit Insurance Corporation, receiver, signed by himself as liquidator, under 12 U. S. C. A., section 192, for an order to compromise numerous assets of the receiver held in the form of claims against certain debtors, including Harold F. Hanes. It recited that authorization had been secured from the Comptroller for a settlement of each of the debts on the terms therein specified. In specific details the terms of the agreement between the receiver and Harold F. Hanes were set out in the following language:

"In settlement of the indebtedness to the Receiver, Harold F. Hanes and wife and William Groome agreed to assign to the Receiver the note secured by the first deed of trust above referred to, to secure the payment of the sum of $3,411.70, with the agreement that the said Harold F. Hanes would be given ninety days from the date the court confirms the composition to pay the $750.00 note endorsed by H. E. Hanes. Said curtailments to be not less than the payment of $100.00 on February 15th, 1936, and the payment of $50.00 on the 15th of each and every month thereafter, subject to the approval of the court."

On November 7, 1935, the circuit court approved the compromise settlement between the liquidator and Harold F. Hanes, with reference to the three notes, and authorized the liquidator to accept the assignment of the deed of trust from Groome to secure the payment of $3,411.70.

On November 19, 1935, McDougal wrote Harold F. Hanes, as follows:

"This is to advise you that a court of competent jurisdiction has approved your composition with the subject bank.

"In accordance with the terms of the agreement, under which this composition was effected, there will be due on your unsecured obligations, the amount of $100.00 on January 18, 1936."

McDougal sent a copy of his petition to the court, together with a certified copy of the court's order, to the Comptroller, and thereafter received no objection thereto from the Comptroller.

McDougal says that Harold F. Hanes advised him in December, 1935, that he did not know whether he would be able to pay the interest on his debts and make a curtail on the $750 note, although he thought he would be able to make a substantial reduction after the first of the year; and that he, McDougal, agreed that if Hanes would pay the interest in December, he could start curtailing the $750 note after the first of the year. It will be here noted that this conference took place after the entry of the court order.

This same witness, McDougal, however, in answer to questions from the judge of the trial court, stated that there was no question but that Harold F. Hanes in his negotiations "expected" that the bank would refrain from undertaking to call any part of the $750 note, or start suit on it for ninety days; that he had actually entered into an understanding with Harold F. Hanes that he wouldn't have to make a payment thereon until January, and then only $50 monthly; and that no action would have been taken if Harold F. Hanes had made the monthly payments in accordance with the plan. He admitted that his petition to the court and the court order were drawn at his request by his attorney, who had participated in the negotiations for the settlement with Harold F. Hanes; but insists that he considered the terms of the agreement set out in the petition merely a plan for payment of the $750 note, without any extension of the time of its maturity. He further stated that he did not carry on the negotiations, but that the details of the agreement and the compromise settlement were arranged by Garrett before the latter left. He does not explain where he got the information as to the terms and details of the proposed settlement set out in his petition.

Harold F. Hanes admitted his indebtedness to the bank. He explained that he executed the deed of trust because the debt to his father-in-law was prior in date to his debts to the bank, and was for money advanced by Mr. Groome in the construction of the home. He testified that, in all of his conferences with Garrett and McDougal, it was understood and agreed by each of them that if Groome would put up the $6,500 note as collateral for his indebtedness of $3,411.70 to the bank, to be paid three years after date, the time of the payment of the $750 note would be extended for ninety days, and thereafter curtailed by monthly payments; that he did not tell his father anything about the matter and was trying to work it out without his help and without worry to him; and that the petition of McDougal to the circuit court for its approval of the compromise actually and correctly

set out the full and entire agreement and understanding of the parties.

H. E. Hanes testified that he knew nothing of the details of the negotiations between his son and the liquidators of the bank, until he received a letter from the liquidator's attorney, dated June 25, 1936, advising him that he would have to pay the $750 note; that he was not informed of any extension of time for payment of the $750 note, nor that the liquidator had postponed his right to enforce payment of the note; that he did not consent or agree to any extension of time or the right to enforce payment; and that his only correspondence or conference with any one of the liquidators was with reference to his direct obligation of $500, which has been paid.

12 U. S. C. A., section 192, Section 5234, Revised Statutes U. S., provides, in part, as follows:

"Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; * * * ."

This action was instituted against Harold F. Hanes and H. E. Hanes. There was a verdict against both defendants. Harold F. Hanes took no exception to the judgment entered against him.

In general, the jury were instructed that if they believed from the evidence, that the liquidator of the bank had made, for a valuable consideration, an agreement to extend the payment of the note in question, or to postpone the holder's right to enforce its collection until ninety days after the court's approval of the petition filed by the liquidator, without the assent of H. E. Hanes, then their verdict should be for the defendant, H. E. Hanes, and that the burden of proof of such facts was on the defendant. They were further told that an agreement to accept deferred payments on

a past due obligation merely for the purpose of allowing the opportunity of making such overdue payments, does not constitute such an extension of the time of payment as releases an endorser.

Since there were no exceptions to the instructions, we are required to decide only whether the evidence is sufficient to support the verdict of the jury.

The plaintiff in error contends that the evidence was merely conflicting, but not lacking in support of his contentions,—First, that no agreement was made during the negotiations for the settlement of the other two notes to extend the $750 note; and, second, that if any agreement was made for such an extension, it was entered into after negotiations for the giving of the new note and collateral had been consummated, and was, therefore, without a valuable consideration.

By the common law and the Negotiable Instruments Law, an endorser of a negotiable note is discharged,—"By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." Virginia Code 1936, section 5682.

██ The language of the statute is clear and explicit. The agreement may be implied or expressed. It may be by parol or in writing, but it must be a binding contract supported by a valuable consideration and for an extension for a definite period. The burden of proving the agreement rests upon the person seeking to be discharged. *Cape Charles Bank* v. *Farmers Mutual Exchange*, 120 Va. 771, 92 S. E. 918.

██ Although a verdict set aside by the trial court is not entitled to the same weight as one supported by it, it must be sustained if there is sufficient credible evidence to support and justify it, notwithstanding the conflicting nature of the evidence. It must, however, be set aside when it is without evidence to support it, or when it is plainly

wrong, even if it is supported by some evidence. Virginia Code 1936, sections 6251, 6363; *Braswell* v. *Virginia Electric & Power Company,* 162 Va. 27, 173 S. E. 365, 369.

In *Clark* v. *Parker,* 161 Va. 480, 486, 171 S. E. 600, 602, Mr. Justice Holt, speaking of the control of the trial judge over verdicts, reiterated with approval:

" 'The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight of the evidence. "It would, indeed, be a futile and idle thing for the law to give a court a supervisory authority over the proceedings and manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider, to some extent at least, the evidence in the cause; * * * " *Cardwell* v. *Norfolk & Western R. Co.,* 114 Va. 500, 506, 77 S. E. 612, 614;' *Kendricks* v. *City of Norfolk,* 139 Va. 702, 124 S. E. 210, 214; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711; *Flannagan* v. *Mutual Ins. Co.,* 152 Va. 38, 146 S. E. 353; *Tabb* v. *Willis,* 155 Va. 836, 156 S. E. 556."

■■ There can be no question but that the compromise, proposed in the petition to the circuit court, and the order entered thereon effected an extension in the time of the payment of the note, and postponed for a definite period the date when the holder might enforce payment.

The record shows that the Comptroller, who controlled the appointment of the receiver and supervised the settlement and adjustment of the assets of the bank, had full knowledge of the petition for the compromise and the order of approval thereof. This he accepted with all the benefits and detriments arising therefrom.

A compromise usually involves an act of favor or concession by each of the parties. The favor or concession received by one is the consideration for the favor or concession granted the other. Unless an extension of the time of the payment of the $750 note was intended to be granted to Harold F. Hanes, it is difficult to understand why it

should have been necessary to secure court approval to accept additional collateral to cover his admitted liability. Certainly no provision of section 5234 of the Revised Statutes of the U. S. requires a receiver to secure a court order to accept either the full payment of a debt, or additional collateral guaranteeing its full payment.

The necessity of securing the approval of a court of the compromise in this instance would seem to have arisen only from an intention to relieve the debtor from the immediate payment of one debt in consideration of security given to assure the payment of a larger debt.

The acts, the declarations, the situation, and circumstances of the parties tend to prove that the consideration for the agreement, consummated upon approval by the circuit court, was the pledge of collateral securing the payment of the principal debt, and an extension of time for the payment of the $750 note.

We must judge a man's intentions from his words, acts and deeds, not from his unexpressed thoughts.

The evidence of both Garrett and McDougal is, in many respects, confusing, conflicting, and unsatisfactory. This must have been equally apparent to the trial judge, who had the opportunity of seeing and hearing these witnesses testify. It may have been that they were too much engaged in other matters to have had the details of the negotiations definitely impressed upon their minds. McDougal testified that there were eight hundred and twenty accounts to settle, adjust, or compromise in this one bank. Yet, he relies upon his memory to contradict his written statement, made during the period of the negotiations, setting out in detail the terms of the proposed settlement. The testimony of Garrett does not constitute evidence of an extension of the time of payment of the $750 note, or lack of extension. Consequently, his statement that H. E. Hanes had knowledge of such extension is equally without support.

In contrast with the testimony offered by the plaintiff in error, the evidence of Harold F. Hanes is clear, positive, and direct. He relates the reason and purpose of the negotia-

tions, the terms thereof and consideration therefor. His evidence is corroborated by a written and signed statement of an agent of the plaintiff in error, charged with the duty of effecting the agreement in question, both as to the terms of the agreement and the time of its consummation. The evidence on behalf of the defendant is sufficient to carry the burden of proof placed upon him.

In this case we are not concerned so much with the weight of evidence, but with the lack of it. The key witnesses, upon whose evidence the plaintiff in error relies, are themselves uncertain of the facts. There is no positive evidence to support the contentions of the plaintiff in error. The verdict of the jury is, therefore, without evidence to support it.

The trial court might properly have stricken the evidence of the plaintiff in error. It did not err in setting aside the verdict of the jury, and entering judgment for the defendant. Its judgment is affirmed.

*Affirmed.*