## Logan et al. v. Bradford et al.

December 17, 1948.

870

Robert Hubbard and John P. Lair for appellants.

A. H. Barker and Bullitt & Middleton for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This is a bill of discovery action. Appellants seek to set aside certain conveyances made by appellee Bradford many years ago, to subject real estate owned by his wife and her relatives to the payment of appellant's claim, to attach the cash surrender value of insurance policies, and to garnishee the debtor's income. The Chan-

cellor dismissed the attachments, adjudged appellee Bradford had no legal or equitable interest in the real and personal properties involved, and allowed no recovery.

This is the third time the parties or their privies have been before this Court on various phases of the initial controversy. The earlier history of the litigation may be found in the cases of Bradford v. Union Trust Co. et al., 242 Ky. 709, 47 S. W. 2d 536, and Logan et al. v. Bradford et al., 296 Ky. 736, 178 S. W. 2d 607.

Appellee Bradford (hereinafter referred to as "appellee") was the endorser on a note for $7,250, executed in 1925, which was negotiated in a Florida land transaction during that almost forgotten boom. Eventually a judgment for the amount due on this note was recovered against him, which judgment was affirmed in the first of the above cited cases. Thereafter, in 1937, an action was filed asking for a general attachment. In 1943 appellants, who are assignees of the judgment filed an amended and substituted petition in the same action alleging frauds, conspiracies, and secret trusts which had been entered into for the purpose of hindering appellee's creditors. A large record of testimony and exhibits has been built up by appellants. It would be impossible to detail all the evidence, but we will take up in order the substance of appellants' claims.

I. *Real estate owned by appellee's wife, mother, sister and brother-in-law.* In 1932 a business associate of appellee purchased what is known as the "King Farm." It was bought through an association of which appellee was secretary. Shortly after this purchase, an undivided one-half interest was sold to his wife. Approximately three years later the original purchaser conveyed the remaining one-half undivided interest to appellee's mother-in-law.

In 1934 appellee's brother-in-law purchased the building which since then and now is rented by the bank employing appellee as cashier. He also bought another small piece of property in Falmouth in 1939. Appellee's wife owns in Falmouth two small lots.

It is insisted by appellants that the above items of real estate were purchased for appellee and are held

in secret trust for him. While it may be the circumstances would give rise to this possibility, appellants have failed to prove such as a fact. It is significant that none of this property was conveyed by appellee, but came from third parties. There is no evidence he furnished any consideration nor is there any proof of a secret agreement. Appellee's wife, her brother and her mother had sources of income of their own, by means of which they could make these purchases independently. The Chancellor was fully justified in refusing to subject this property to payment of appellee's obligation.

II. *Conveyances made by appellee.* In 1926 appellee conveyed to his sister a one-sixth undivided interest in the home property in Falmouth which he had inherited from his parents. This property was encumbered by a mortgage, and there is evidence appellee was indebted to his sister on a $900 note. The value of appellee's interest was not shown.

Appellee also assigned certain interests in Florida real estate about the same time, but the proof indicates these rights were of little, if any, value. In 1926 appellee transferred twenty odd shares of capital stock of the First National Bank of Falmouth to his attorney. This attorney is not a party defendant and it is not shown that this transfer was made without consideration.

Appellants failed to prove that the above conveyances and transfers were without consideration or were made in fraud of his creditors.

III. *Appellee's income from salaries.* Appellee is employed as cashier by the First National Bank of Falmouth. His salary averaged approximately $200 a month for several years. In January 1928 the Board of Directors began to pay this salary in advance and has been doing so ever since. The reason why this method of payment was adopted is thus stated by one of the directors: "he refused to serve unless he is paid in advance. He is a good, honest banker and we paid him in advance."

Appellee is also treasurer of the Pendleton County Fiscal Court and he received a salary of $25 per month (not $300 per month as appellants misstate in their

brief). Apparently since 1943 he has been paying himself this salary in advance. At any rate, at the time the garnishments were served on the Fiscal Court, it was not indebted to appellee in any amount.

It is a well recognized rule that it is not a fraud on the rights of creditors for an employer to pay his employee a salary in advance where the employer finds it necessary to do so in order to retain the other's services. 4 Am. Jur., Attachment and Garnishment, Section 319; Pike County v. Sowards et al., 147 Ky. 37, 143 S. W. 745. The courts cannot interfere with reasonable contracts made between the debtor and his employer. The bank in this case was not indebted to appellee, and his future potential earnings are not subject to attachment.

While the circumstances with respect to his salary from the Fiscal Court are somewhat different, the Fiscal Court truthfully answered in the case that it was not indebted to him.

IV. *Insurance policies.* Appellants had attachments served on two insurance companies which had issued three policies to appellee with a face value of $7,500. Appellee's wife was the beneficiary of two of these policies and his estate was the beneficiary of the other. At the time the attachments were issued, the policies had a cash value of approximately $2,500.

Appellee contends that by virtue of statute and public policy the cash values cannot be subjected to the claim of a creditor. Without attempting to analyze these arguments, we are of the opinion, as also contended by appellee, that the question is now res judicata. In 1935, in the Jefferson Circuit Court, the original holder of this judgment had attachments issued against these same insurance companies attempting to subject appellee's same interest in the policies. Upon proper motions being made, the Court discharged the attachments. Subsequently the Court discharged and dismissed the two insurance companies as garnishees. These orders were excepted to but no appeal was taken. It therefore appears that the very question presented here with respect to the cash surrender value of these insurance policies was considered, determined and finally adjudged in the earlier proceedings. No appeal having been taken there-

from, the judgment of the Jefferson Circuit Court is binding on appellants, since they are in privity with the original judgment creditor.

A review of the proceedings taken before the Chancellor indicates he carefully considered the rights of the parties, and his findings are based upon adequate evidence and the application of the proper principles of law.

For the reasons stated, the judgment is affirmed.