**LEE FEDERAL CREDIT UNION, Appellant,**

v.

**Warnetta M. GUSSIE, Appellee,**

v.

**Susan T. LEE and Kwang W. Rowe, Appellees.**

**No. 75–1694.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1975.

Decided May 17, 1976.

Gerald W. Hyland (John Lacci and Mrs. Carmen C. Hyland [Third-year law students], on brief), for appellant.

Thomas J. Morris, and Keh Soo Park, Arlington, Va., on brief, for appellee Kwang W. Rowe.

Theodore J. Borgna, Alexandria, Va. (Bendheim, Ratner & Milligan, Alexandria, Va., on brief), for appellee Warnetta Gussie.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge.

This is an appeal from an order dismissing the complaint of Lee Federal Credit Union (Credit) against Warnetta Gussie, the accommodation co-maker of a promissory note. Since it held Gussie not liable, it follows there is no liability on Gussie's third party complaint, and it should be noted Rowe had no liability as an accommodation co-maker.

Credit instituted this action against Warnetta Gussie, a co-maker on a promissory note. Gussie thereafter filed a third party complaint against Ernest Lee, Susan Lee,[1] James Lee and Kwang Rowe, the remaining co-makers on the note. The case was tried before a judge sitting without a jury who, at the close of plaintiff-Credit's evidence entered judgment for the defendants. Upon a review of the record and the opinion of the trial judge, we affirm.

The controversy in this case arose out of a loan in the amount of $30,000 which was

---

1. Susan Lee was the wife of Ernest Lee, the principal maker on the note.

secured by a promissory note. Ernest Lee initially applied for the loan for the purpose of purchasing a restaurant. Before approving his application, however, Credit requested that Ernest Lee provide additional co-makers as security. James Lee, Warnetta Gussie and Kwang Rowe, having submitted co-makers applications, signed the note as co-makers. As mentioned Susan Lee, wife of Ernest, also signed as a co-maker. The loan was subsequently granted on September 1, 1971. It became delinquent at the latest on June 3, 1972, the last payment having been received from Ernest Lee on April 9 of that year. No attempt was made at that time to collect the note nor was any effort made to inform the co-makers of the delinquency. It was not until some months later, on August 8, 1972, that Ernest Lee finally stopped by at a dinner meeting of the board of directors of Credit and gave them a check for $4,900 which would have brought the note up to date through October of 1972. That check was not made payable until October. When Credit inquired as to the post-dated check it was assured by Ernest that there would be funds to cover the check when it became payable.

Based upon this assurance, Credit did nothing further until October when it deposited the check. It was returned due to insufficient funds and Credit thereupon made repeated, unsuccessful attempts to contact Ernest Lee and collect the monies owed. Again, however, Credit failed to give the co-makers notice regarding either its acceptance of the post-dated check or the delinquency of the note. It was not until August 28, 1973, after Credit learned that Ernest Lee had filed a petition in bankruptcy,[2] that Gussie was finally notified of the delinquency and turned to for satisfaction.

■■■ It is clear from the evidence that both Gussie and Rowe signed the note in question "for the purpose of lending [their] name[s] to another party to it," namely Ernest Lee. As such, they were accommodation parties within the meaning of § 8.3–415(1) of the Virginia Code.[3] Credit contends that the oral evidence as to the accommodation status of the co-makers should have been excluded since the face of the note reveals that they signed it as makers without any reservation of rights. Therefore, according to Credit, they are liable in the same manner and to the same extent as Ernest Lee. Section 8.3–415(3) provides to the contrary, however. It reads:

> "As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof."

While Credit may have been a holder in due course,[4] the district court found as a fact, which is not clearly erroneous, that Credit knew that the co-makers on the note were in fact accommodation parties, so Credit could not have been a holder in due course "without notice of the accommodation." This is one of the "other cases" mentioned in § 8.3–415(3) in which "the accommodation character may be shown by oral proof." Thus, the oral evidence as to the status of the parties was properly admitted.

■■■ The question then becomes whether the actions of Credit in relation to the note

---

**2.** Credit also learned at about this time that James Lee had also filed a petition in bankruptcy.

**3.** Section 8.3–415. Contract of accommodation party.—(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

**4.** Section 8.3–302 of the Virginia Code defines a holder in due course as follows:

(1) A holder in due course is a holder who takes the instrument

   (a) for value; and

   (b) in good faith; and

   (c) without notice that it is overdue or has been dishonored or of any defenses against or claim to it on the part of any person.

(2) A payee may be a holder in due course.

   \*   \*   \*   \*   \*   \*

were sufficient to discharge Rowe and Gussie from any further liability. We are of opinion they were. Section 8.3–606 of the Virginia Code provides that:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary . . ."

In the instant case, Credit accepted Ernest Lee's post-dated check and, without notice or reservation of rights, extended the time of payment from the date the note had become delinquent until October when the check became payable. Such extension of time was granted without the consent of the accommodation parties and they were thus relieved of further liability upon the note. Credit, by its extension of time, at the very least, had "agree[d] to suspend the right to enforce against" Ernest Lee. § 8.3–606(1)(a).

■ We recognize it is at least arguable that the agreed extension of time may not have been binding upon Credit and that it may have been able to institute proceedings against Lee prior to the date the check became payable. Yet, under the UCC in Virginia, it is the agreement which is controlling and not whether that agreement is necessarily binding. This represents a change from earlier Virginia law as is pointed out by the Virginia Comments to § 8.3–606. There, it states:

"Under the NIL [Negotiable Instruments Law] an agreement to extend the time of payment in order to have the effect of discharging parties secondarily liable had to be 'binding upon the holder.' The UCC, in accordance with its general definition of an agreement as being a bargain in fact, as distinguished from a contract, which is the effect given by law to an agreement, eliminates the requirement that the agreement be binding."

Compare, e. g., *Cawley v. Hanes,* 173 Va. 381, 389, 4 S.E.2d 376 (1939); *Cape Charles Bank, Inc. v. Farmers Mutual Exchange,* 120 Va. 771, 92 S.E. 918 (1917) dealing with the requirements under the NIL. The evidence clearly indicates that Credit agreed to extend additional time for payment on the note to Ernest Lee in exchange for the post-dated check which he tendered in August. This agreement, having been reached without the consent of either Rowe or Gussie, was sufficient to relieve them from further liability.[5]

The judgment of the district court is accordingly

*AFFIRMED.*

---

**5.** Susan Lee has entered no appearance in this appeal. No judgment in this case has been entered against her.