# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Virginia Electric and Power Co.
### v. Adelaide Harrell Thomas.

December 7, 1942.

Record No. 2572.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

T. *Justin Moore*, *Roman E. Miller* and *Archibald G. Robertson*, for the plaintiff in error.

*Herman Lubschutz*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of an accident which happened in the city of Norfolk, Virginia, at the corner of Granby Street and City Hall Avenue. The parties will be generally referred to as they were related in the trial court.

The plaintiff was a passenger on a bus of the defendant. When the bus neared its designated stopping point at the place referred to, another bus was in front of it discharging passengers, or waiting for the proper signal light, so that the plaintiff's bus was obliged to stop before it reached the usual alighting place and as it did so the forward door was opened by the driver and some of the passengers, about four, and among them the plaintiff, alighted in the street. Two of the passengers preceded the plaintiff and alighted safely, they

were men, one followed her, who was a Mrs. Hudgins. The pavement of the street, where the accident happened, was constructed of granite blocks, called "Durax". The blocks were bound together by a mixture of asphalt and cement, which was black. The blocks were of a grayish hue. The stones were laid crescently to more effectually resist the impact of motor traffic.

On the morning of July 12, 1941, it was misting. One of the "Durax" blocks had become displaced and this caused a hole which was between 7 and 8 inches in diameter and 2¾ inches deep. It was full of water at the time of the accident. The testimony of the plaintiff placed the hole directly opposite the front step of the bus where the passengers alighted. The plaintiff stepped into this hole and fell and broke her left arm and strained her right one and skinned one of her knees. She was taken to a hospital where she was cared for and her injuries caused an absence from her work of ten weeks. She recovered sufficiently to return to her work, which is that of a saleswoman in a department store. It is in evidence that she cannot lift heavy bolts of cloth as she formerly did. The point in the street at which the bus stopped is between 5 and 6 feet from the curbing on the right side of the street and some 50 feet from the corner which is marked as the regular stop.

The plaintiff and her witness, Mrs. Hudgins, testified to the effect that the driver was unsympathetic and uncivil and displayed no concern for her interest and comfort.

We have stated the more pertinent facts in the light of the plaintiff's testimony, mindful that her position in the case demands this. The jury rendered a verdict in her favor for $1,690.00, which was confirmed by the court.

Our task is shortened by the mutual concession that the sole question for decision is whether or not the defendant was guilty of negligence which either proximately caused or efficiently contributed to the injury of the plaintiff. And that question is still further restricted by the action of the trial court in ruling that the city ordinance, which provided at what points or places on the city streets all vehicles shall stop

for the purpose of taking on or letting off passengers, has no bearing on the question of liability of the defendant, and that such ordinance be disregarded by them. We think this ruling was eminently proper.

In view of the known traffic conditions in cities involving congestion incident to speed, crowding and tie-ups, we think this statement is warranted by the evidence; but, if it is not, we would be justified in taking judicial notice of such condition. The effect of the court's ruling was that the defendant was not negligent in stopping its bus where it did, when it did, under the circumstances obtaining. With this we are in agreement.

It remains for us to consider whether the defendant's driver saw or should have seen the hole into which the plaintiff stepped and either not have stopped his bus where he did and opened its front door, or should have warned the plaintiff of its presence and her consequent danger.

On this issue we will relate some of the evidence which comes from the plaintiff's own witnesses, and most of which appears on direct examination.

As we have seen, the accident happened on July 12, 1941, when the hole was full of water. The following questions and answers appear in the examination of H. W. Gillen, a witness, who is a commercial photographer, and who was introduced by the plaintiff:

"Q. Did you take a picture of a hole on City Hall Avenue, in the street, on July 12?

"A. I did—July 14.

"Q. Yes, that is right—July 14, 1941.

"A. Yes, sir.

"Q. About what time of day did you take that?

"A. 12:30.

"Q. Will you describe that hole?

"A. The hole was 5 feet 4 inches from the curbing—that is the south side of City Hall Avenue; the hole is eight inches in diameter, 2 and ¾ inches deep; the hole was approximately 60 feet from the southwest corner of Granby Street and City Hall Avenue. The hole, of course you can

understand by the picture when you see it, at the time the picture was made it was full of water and it looked the same as if the stone—I would say the street at this particular place is made of granite stone, and, at the time the picture was made, in order to obtain the proper effect, we had to take the water out. When the water was in the hole, it looked like the granite stones were in their places.

"Q. Mr. Gillen, the photograph which you hold is the one which you took on July 14?

"A. That is correct.

"Q. When the water was removed from this hole, was any of the dirt in the hole removed?

"A. No, none whatsoever; just the water.

"Q. When you say when the water was in there it looked like the stones were together, do you mean it looked like any of these other portions in here?

"A. That is correct. If you look at this section of the picture you can see if that was filled with water and there were no granite stones in there, it would look just about the same."

It will be noted that this witness said that when the water was in the hole it looked like the granite stones were in their places. The same witness testified further as follows:

"Q. In coming down the street, you said that a person looking at it would naturally have thought it was properly paved?

"A. That is correct, yes."

If this witness has correctly discerned the situation, and we take it that he has for he is vouched for by the plaintiff and put upon the stand to prove her case, and his testimony on the same feature is in perfect harmony with that of other witnesses, we do not see how the defendant's driver could be charged with negligence in failing to see a depression that was obscured or hidden by conditions which made the street have the appearance of being properly paved.

Another of the plaintiff's witnesses, Mrs. Hudgins, testified as follows:

"Q. And the hole into which she fell, or the depression, was filled with water?

"A. Yes.

"Q. Did you examine the depression after the accident?

"A. No. I just saw the hole, was all.

"Q. You didn't notice it after?

"A. No. You would not have noticed it later on, because it was filled with water, and you couldn't have told it was a hole.

"Q. You would not have known there was a hole there except for the fact that she had fallen?

"A. That is all."

This testimony was elicited on cross-examination of the witness but it is direct and probative.

It is very difficult for a person in a moving automobile to detect objects on the surface of the street unless they are so large as to constitute a warning. And this difficulty is accentuated by the position which the driver occupies on a large bus. If, however, the street at the place of the depression, under the conditions that were present, had the appearance of being properly paved and if an observer would not have known that the hole was there, had a person not fallen into it, how can it be fairly said that the driver should have seen it in time to have warned his passengers concerning it.

What we have thus far said is based upon the plaintiff's testimony which, it seems to us, justifies the statement that no negligence has been proven against the defendant. On the contrary the testimony quoted acquits it of negligence.

As to whether the defendant company had notice of the existence of the hole the city of Norfolk, which was a co-defendant, introduced three witnesses. J. J. Callahan, who is one of its traffic officers, whose duty is to go over the streets directing traffic and conserving the safety of the public, said that he never noticed the hole. George Boush, an engineer of surveys, said that he never heard of the hole before the morning when he went there to make measurements of it, which was on July 22, 1941. A. R. Williamson, superintendent of Street Maintenance and Repair Division of the city of

Norfolk, testified that all reports on needed street repairs came to him and that he never heard of the hole until July, 1941, and that that part of City Hall Avenue where the depression is is a safe place for travel.

It is true that the witnesses, Boush and Williamson, said that the hole was visible and could plainly be seen, but we note that they saw it under conditions differing from those which existed at the time of the accident and that they went to the place where it was for the purpose of seeing it and were looking for it.

■ It is quite legitimate to consider the defendant's testimony when it is not only not in conflict with that of the plaintiff, but is actually coincident with it and corroborative of it.

H. F. McGlaughon, who had been an employee of the defendant and was then one of its pensioners and who has a son in the employ of the defendant, testified that he was on the bus and saw the plaintiff fall and that he ran to the front and told the operator about it, and he then got off the bus and he was asked this question:

"Q.   Could you see that hole the minute you got off the bus?

"A.   I wouldn't have seen the hole if she hadn't fell."

This so coincides with the testimony of the plaintiff and that of the city as to strengthen the position of the defendant that it was not negligent.

The learned trial judge filed an opinion which is made a part of the record.   He comments upon the evidence which we have quoted and says that it would be stronger for the defendant if the jury had not viewed the hole and if they had not had the photograph taken when the hole was empty. It is of moment that the jury viewed the hole when it was empty and the testimony establishes the fact beyond cavil that the appearance of the hole when it is filled with water and when it is empty is entirely different.   The opinion states that "the fact that it held a pool of water was indisputable evidence of the existence of a hole of some depth, great or small."   That, however, is not the question here.   Of course

there was a hole, but ought the driver to have seen it? Did the defendant have notice of it so as to have guarded against the danger in the exercise of that degree of care with which it is charged, which is the highest? It is not an insurer of the safety of its passengers.

This court said in the case of *Bohlkin* v. *Portsmouth*, 146 Va. 340, 131 S. E. 790:

"It should be remembered that the duty of the trial judge to set aside a verdict of the jury where the same is not justified by the law and the evidence is just as imperative as is the duty to sustain the verdict where a contrary condition exists."

This duty we have held is as imperative upon the appellate court.

See also *Nicholson* v. *Garland*, 156 Va. 745, 158 S. E. 901.

In the recent case of *Smith* v. *Turner*, 178 Va. 172, 180, 16 S. E. (2d) 370, 136 A. L. R. 1251, it was said, through Eggleston, J.: "Where a verdict is 'plainly wrong' it should be set aside even if it is supported by some evidence. Code, Section 6363; *Braswell* v. *Virginia Elec., etc., Co.*, 162 Va. 27, 38, 173 S. E. 365; *Cawley* v. *Hanes*, 173 Va. 381, 390, 4 S. E. (2d) 376, 379.

"As was said in *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S. E. 15, 'But with all the respect that is justly due to the verdict of a jury, and which is freely accorded to it, if there has been "a plain deviation from right and justice" even a court of law will not make itself a party to such a wrong by entering up judgment on it.' See also *Ellison* v. *Hampton & Langley Field Ry. Co.*, 154 Va. 39, 45, 152 S. E. 373."

Our conclusion is that the verdict of the jury and the judgment of the court are not sustained by the evidence, that the plaintiff has failed to prove negligence on the part of the defendant, and therefore the judgment is reversed and final judgment is hereby entered for the defendant.

*Reversed and final judgment.*