Argued December 7, 1960, affirmed February 21, 1961

# SMITH *v.* PORTLAND TRACTION COMPANY
359 P. 2d 899

*Alan H. Johansen,* Portland, argued the cause for appellant. With him on the brief were Krause, Lindsay & Nahstoll, Portland.

*Lamar Tooze, Jr.* and *Edwin J. Peterson,* Portland, argued the cause for respondent. With them on the brief were Tooze, Kerr, Tooze & Morrell, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Edward Smith, from a judgment in favor of the defendant, Portland Traction Company, which the circuit court entered after it had sustained the defendant's motion for a judgment of involuntary nonsuit.

The defendant is a common carrier, and upon the occasion with which this case is concerned the plaintiff's wife, Daisy Smith, was a passenger in one of its buses. The plaintiff brought this action to recover damages for (1) medical expenses incurred for his wife, (2) the loss to him of her consortium and (3) the

loss to him of her services as secretary in his office—all of which he alleges he sustained through the defendant's purported negligence. The plaintiff charges that when the defendant stopped its bus in the intersection of southwest Park Place and Vista Avenue in Portland so that his wife and several other passengers could depart, it disregarded the demands of Portland Ordinance No. 75607 and of due care. He claims that it chose an unsafe place for the passengers to alight. In endeavoring to step down Mrs. Smith, who was heavy and 64 years of age, fell to the pavement and was injured. The mishap occurred November 20, 1953, at 5:40 p. m. The place where it occurred was dark although a street light was near by. Seemingly the presence of the bus cast a shadow upon the place where Mrs. Smith undertook to alight. The pavement was dry and in good condition although the plaintiff's brief states "it contained ripples, varying from one-eighth inch to one-fourth inch." The curb stone which was near the place where Mrs. Smith fell was approximately 7 inches high. Mrs. Smith had ridden upon this bus line twice a week since 1941 or about 1200 times. The appellant's (plaintiff) brief says, "Plaintiff's wife had disembarked from the bus at this intersection before," and continues: "Although she had been discharged from defendant's buses out away from the curb on previous occasions this had not happened very often, and she expected on the occasion in question to be able to step nearer to the curb." Upon the occasion in question the bus stopped six to six and one-half feet from the curb. In departing from the bus Mrs. Smith followed some other passengers and through seeing them walk to the curb after alighting knew that the bus was not adjacent to it. She did not know the cause of her fall. Due to the fact that the

intersection where Mrs. Smith fell is in a hilly part of Portland the pavement in the intersection slopes east and north toward the curb. The slope varies from 11.4 to 13.1 per cent.

The plaintiff claims that the defendant was negligent in the following particulars:

1. Failure to have pulled up to the curb.
2. The discharge of the passengers at a place where the pavement sloped.
3. The use of an unsafe bus stop.
4. Failure to maintain an adequate lookout.
5. Failure to warn Mrs. Smith "of the said danger in alighting."

After her injury Mrs. Smith brought an action against the defendant in which she averred that the defendant was negligent. Upon trial the jury returned a verdict for the defendant upon which judgment was entered and Mrs. Smith appealed. *Smith v. Portland Traction Company*, 220 Or 215, 349 P2d 286, affirmed the judgment for the defendant which the circuit court entered in Mrs. Smith's case. The issues which were submitted upon appeal in that action were materially different from those we face in this one.

The plaintiff presents three assignments of error. The first of them reads:

"The court erred in excluding from evidence Portland City Ordinance No. 75607, known as the 'Traffic Code,' including § 19-1304(b) thereof."

The second assignment of error challenges the ruling of the trial judge which sustained, at the close of the plaintiff's case, the defendant's motion for an order of involuntary nonsuit. The third is concerned with the measure of damages, but since it will be unnecessary to consider damages if the second assign-

ment of error is sustained, we will not at this point set it forth.

■ We will now consider the first assignment of error. Portland's City Ordinance No. 75607 § 19-1304 provides inter alia:

> "Wherever no bus-loading zone is provided at the curb, all motor buses and all trolley coaches, except such trolley coaches as may be operated from contact with a positive streetcar trolley wire, shall pull to the right-hand curb for the purpose of taking on or discharging passengers; provided, however, that where the righthand lane or parking lane is occupied by parked motor vehicles said trolley coaches or motor buses shall pull to the right as far as possible under the circumstances then existing."

It will be noticed that the defendant violated the provision of the ordinance just quoted when, immediately preceding the fall of Mrs. Smith, it stopped its bus in the intersection of Park Place and Vista Avenue.

■ The conditions under which violation of an ordinance will establish liability as negligence per se are that (1) the violation be the proximate cause of plaintiff's injuries, *Rose v. Portland Traction Co.,* 219 Or 1, 341 P2d 125, 346 P2d 375; *Birks v. East Side Transfer Co.,* 194 Or 7, 241 P2d 120; *Staples v. Senders,* 164 Or 244, 107 P2d 232; *Myrtle Point Transportation Co. v. Port of Coquille River,* 86 Or 311, 168 P 625, (2) plaintiff be within the class of persons intended to be protected by the legislation, *Hillman v. Northern Wasco County PUD,* 213 Or 264, 323 P2d 664, (3) the accident be within the area of risk intended to be avoided by the ordinance, *Snyder*

*v. Prairie Logging Co., Inc.,* supra. Prosser on Torts, p 152, puts it this way:

> "The standard of conduct of a reasonable man may be established by a statute or ordinance. The violation of such a legislative enactment may be negligence in itself if:
>
> "(a) The plaintiff is one of a class of persons whom the statute was intended to protect, and
>
> "(b) The harm which has occurred is of the type which it was intended to prevent."

The question of whether the fall of an alighting passenger is within the area of risk intended to be avoided by ordinances requiring buses to discharge passengers at the curb has come before courts several times. Ordinances similar to Portland's have been construed by other courts in cases in which a passenger was injured while alighting from a common carrier bus which stopped away from the curb. The decisions hold that the risk of falling was not intended to be guarded against by the requirement that the bus pull up to the curb. The ordinance's purposes are to protect passengers from injury by cars that might undertake to pass between the bus and the curb and also to facilitate the movement of traffic. No cases to the contrary have been found.

In *Louisville Transit Co. v. Jones* (Ky) 291 SW2d 49, 50, the court stated:

> "* * * The purpose of the ordinance as a part of the city's traffic code was to expedite traffic, to prevent stopped buses from blocking the roadway any more than necessary, and possibly to protect alighting passengers from other vehicular traffic. It might be contended that the ordinance was also intended to assure discharged passengers a safe place to alight and that a loading platform outside the curb line of the roadway was the safest

place attainable. We do not believe this latter contention is within the purview of the ordinance, for the driver still could stop his bus to discharge passengers at a regularly established stop even if parked vehicles or other conditions prevented him from sidling his bus into the curb in compliance with the ordinance. He was not required in such circumstances to carry his passengers beyond their destination to the next regular stop where conditions permitted him to comply with the ordinance. When a regular coach stop was blocked for any reason, he, nevertheless, could stop to discharge his passengers if he exercised the highest degree of care and skill in protecting the safety of his passengers as they alighted from the bus. * * * It is our conclusion, therefore, that violation of the ordinance was improperly injected into this case because the risk here involved—slipping or falling after alighting from the bus—was not a risk which the ordinance was designed to protect against * * *."

*Mills v. City of Cleveland,* 97 Ohio A 78, 117 NE2d 471, 474, 475, held:

"The ordinance herein is, among other things, designed for the purpose of preventing traffic congestion and to provide for the free and safe flow of traffic upon the streets of the city of Cleveland. The ordinance was not enacted for the purpose of providing a passenger the right to step into the curb when leaving the bus, since, by its terms, it permits a discharge of passengers at a point more than one foot from the curb when it is impossible to get that close, and, too, it also permits angle parking on certain streets."

*Reque v. Milwaukee & Suburban Transportation Corp.,* 7 Wis 2d 111, 114a, 95 NW2d 752, 97 NW2d 182, states:

"Such statute was enacted as a rule of the road for the purpose of insuring sufficient adequate

usable highway space to vehicles traveling in the same direction as was the stopped or parked vehicle, and to prevent a collision occurring between such moving vehicle and the one stopped or parked. By the observance of the statute on the part of the operator of the stopped vehicle, such moving vehicles would not be under the necessity of diverging from their own traffic lane in order to avoid a collision. We can perceive no legislative purpose in such statute to protect passengers in a public conveyance such as defendant's bus from any hazard other than that arising from a collision between a moving vehicle and the stopped bus. Not every violation of a statute constitutes negligence per se."

Where the discharge of passengers was not affected by any ordinance, courts have held that permitting them to exit into the street was not negligence: *MacLean v. City and County of San Francisco,* 127 Cal App 2d 263, 273 P2d 698; *Hoffman v. Philadelphia Transp. Co.,* 369 Pa 212, 85 A2d 144; *Marshall v. Capital Transit Co.,* 216 F2d 636; *Swank v. Capital Transit Co.,* 220 F2d 807. *Hoffman v. Philadelphia Transp. Co.,* supra, states:

"It remains only to add that, even if the bus did stop some distance out from the curb instead of closely adjacent to it, that would not prove negligence * * *."

Although the part of the reasoning in the first two of the above cases which seems to attach importance to the fact that compliance with the demands of the ordinance could not be made under impractical conditions does not appeal to us, yet we believe that other parts placed the right construction upon the ordinances. We do not believe that the purpose of the ordinance was to prevent the fall of a descending passenger. The plaintiff tries to distinguish these

cases on their facts, but this is futile where the cases explicitly state that the risk of falling is not within the purview of the ordinance or statute. The first assignment of error is without merit.

The second assignment of error, as we have noted, challenges the ruling of the trial judge that sustained the defendant's motion for an involuntary nonsuit.

■ The plaintiff, in arguing his contention that the record establishes liability, contends that it was negligence for the defendant to have discharged his wife upon a sloping, uneven, poorly lighted street.

■ A public carrier must discharge its passengers at a reasonably safe place. *Lewis v. Pacific Greyhound Lines, Inc.,* 147 Or 588, 34 P2d 616, 96 ALR 718; *Corrigan v. Portland Traction Co.,* 157 Or 496, 73 P2d 378; *Jackson v. City of Seattle,* 15 Wash 2d 505, 131 P2d 172; *Trzecki v. St. Louis Public Service Co.,* 258 SW2d 676; *Allen v. Dillman,* 249 SW2d 23; *Houston Transit Co. v. McQuade,* 223 SW2d 64; *Thomas v. Jamaica Buses,* 5 NY2d 862, 182 NYS2d 15; *Sims v. Chicago Transit Authority,* 4 Ill 2d 60, 122 NE2d 221.

■ A common carrier which operates lines of buses, unlike a railroad that operates its own railroad depot, stops its vehicles upon the public streets. It has no more control over the streets and their state of repair than any other member of society. Judges know from their every-day experience in life that the pavement of our streets is not perfect. The flow of traffic over the thoroughfares leaves its mark upon the pavement. From time to time the pavement is torn up by crews which lay water mains, sewer pipes and other facilities. When the pavement is relaid perfect

matching with existing surfaces is rarely achieved. Repair crews do not always remedy defects promptly when the latter develop. The operators of bus lines can not be expected to make note of every unevenness in the surface when it appears. Nor can the bus lines be expected to stop their vehicles in only such places where the alighting passenger will be assured of a flawless footing upon departing from the bus.

Courts have held that it is not negligent to discharge a passenger on the street—rather than upon the top of the curb—thereby necessitating the passenger's making a deeper step than would have been required if he had been discharged upon the curb.

In *Schultz v. Kenosha Motor Coach Lines, Inc.*, 257 Wis 21, 42 NW2d 151, the plaintiff, a cripple who wore a brace and used a cane, fell while alighting from a bus in the street away from the curb. If the defendant had discharged him at the curb his descent from the bus step to the curb stone would have been 7½ inches rather than 13½ inches. The court held that it was not negligence to discharge a passenger at a distance from the curb. It said, "The plaintiff concedes that the place for discharging passengers was safe for all but him." It added, "He had given no notice to the bus driver that he intended to alight at this stop or that he had to be discharged at a curb." In affirming judgment for the defendant the court ruled, "The defendant provided a safe place to alight."

In *Marshall v. Capital Transit Co.,* supra, the plaintiff, while alighting from one of the defendant's buses which had stopped 30 inches from the curb, fell to the pavement and thereby sustained an injury. In that case, as in the one before us, there was an

incline toward the curb and there was no unusual hazard in the street. The court held that those facts could not support a finding of negligence. *Swank v. Capital Transit Co.*, supra, upon facts similar to those in the Marshall case, reached the same result and affirmed the rule employed in that case. The court said:

"\* \* \* This result is fortified by the fact that on several occasions appellant had alighted on the street pavement, and not on the curb, at the point in question. Furthermore, she was aware that she was making a full step down to the street pavement and not the shorter distance to the top of the curb."

See to the same effect *Cleveland v. Danville Traction and Power Co.*, 179 Va 256, 18 SE2d 913.

The courts hold that it is not negligent to discharge a passenger upon a sloping street. In the case at bar the plaintiff's wife had alighted from the bus at the intersection in question hundreds of times and knew of the slope of the pavement.

In *Cleveland v. Danville Traction and Power Co.*, supra, the bus stopped on a dark night upon a sloping pavement at the entrance to a driveway where a curb stone was impossible. The court took occasion to remark that "a number of passengers alighted when the bus stopped, all safely and without incident, except" the plaintiff. In the case before us all alighted safely and went on their way except the plaintiff's wife. In the Cleveland case no recovery was allowed.

*Meelhein v. Public Service Coordinated Transport*, 121 NJL 163, 1 A2d 418, states:

"\* \* \* Therefore, taking as true the stopping

of a common carrier's motor bus on a steep grade, and from twelve to twenty inches from the curbing, without more; and giving thereto the benefit of all legitimate inferences deductible therefrom * * * we must determine whether or not same violated the defendant's duty of using a high degree of care for the safety of the plaintiffs, and of providing a reasonably safe place for them to alight, and we conclude that such proof, standing alone, is insufficient to impose upon the defendant the burden of going forward."

■ A common carrier is not responsible for the condition of the street where passengers alight and breaches its duty to discharge passengers in a reasonably safe place only where it knows or should have known of defects in the street. *Southeastern Greyhound Lines v. Woods,* 298 Ky 773, 184 SW2d 93; *Gillson v. Osborne,* 220 Minn 122, 19 NW2d 1; *Carroll v. City of Pittsburgh,* 368 Pa 436, 84 A2d 505; *Hoffman v. Philadelphia Transp. Co.,* supra; *Virginia Electric & Power Co. v. Thomas,* 180 Va 292, 23 SE2d 148. In the case last cited the defendant's bus stopped at a place five or six feet from the curb and there the plaintiff alighted. Two men preceded her. Near the place where she alighted there was a hole in the stone block pavement seven or eight inches in diameter and two and three-fourths inches deep. When she stepped into it she fell to the pavement and was injured. The bus company had no knowledge of that defect. It was filled with rain at the time of the plaintiff's mishap and therefore was difficult of discernment by the bus driver. The court found no evidence indicating that the defendant should have known about the hole in the pavement and therefore reversed the judgment that the trial court had entered for the plaintiff.

*Snell v. Coast Cities Coaches,* 15 N J Super 595, 83 A2d 797, ruled:

> "There is no evidence in the transcript from which it could be logically inferred that the existence of the depression in the grass plot was sufficiently exposed to view to have been visible to a reasonably vigilant and cautious driver similarly situated. There is no positive duty resting upon the operators of such common carriages to anticipate every uneven surface or defect in the highway or along its side and stop his vehicle so as to avoid the remote possibility of a passenger stepping on some uneven surface or in a depression which, notwithstanding the exercise of reasonable watchfulness, did not appear to be and was not a place having the manifest characteristics of potential harm. MacDonald v. Philadelphia Rural Transit Company, 147 Pa.Super. 220, 24 A.2d 37 (Super. Ct. 1942); Virginia Electric & Power Co. v. Thomas, 180 Va. 292, 23 S.E.2d 148 (Sup.Ct. of App. 1942)."

The Carroll case quoted with approval the following from *Perret v. George,* 286 Pa 221, 133 A 228:

> " 'Street car companies are not required to observe the condition of streets over which their cars travel, so as to stop their cars with exactness at places where passengers may avoid ordinary defects in the highway while alighting. To require otherwise would be to exact of such carriers a degree of care not consistent with efficient public service, and would impose an obligation impossible of performance, considering the condition of some of the highways of to-day. * * * To hold, under such circumstances, that the duty of stopping at a safe place to alight embraced the obligation to avoid any defect in the highway, between the car and the curb, would cause the company to be liable as an insurer of the safety of a pedestrian in coming from or going to a car. If there was

responsibility for the accident, it was the municipality's, not appellee's.' * * *"

In the case from which the quotation was taken the plaintiff was injured when alighting from a street car by stepping into a hole in the street which she was prevented from seeing because of people in front of her. The court held that she was not entitled to recover. In the Carroll case the plaintiff, upon departing from a street car, stepped into a hole and thereby received an injury. Based upon the reasoning of the Perret case the court held that the plaintiff was not entitled to recover.

We do not believe that the fact that the bus created a shadow into which the plaintiff stepped warrants a finding of negligence on defendant's part. In *Greco v. Public Service Interstate Transp. Co.,* 135 NJ 280, 51 A2d 1, the bus made a stop pursuant to the plaintiff's request so that he could depart. Where it stopped there was a light overhead, but the presence of the bus created a shadow over the place where the plaintiff alighted. The court ruled:

> "Giving to appellant every proper and reasonable inference to be drawn from the testimony, we conclude that reasonable men ought not to differ in the finding that respondent, in the exercise of the high degree of care for the safety of its passengers to which it is held, did provide a reasonably safe place for appellant to alight from its bus."

Without resort to further analysis we express our belief that the second assignment of error presents no merit. The defendant's motion for an involuntary nonsuit was properly allowed.

The judgment of the circuit court is affirmed.