**912**

Minnie McCLASKEY, Roy Grant and
Nina Grant, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 65–254.

United States District Court
D. Oregon.

Sept. 6, 1966.

Lewis K. Scott, McColloch, Dezendorf
& Spears, Portland, Or., and William G.
Dick, Dick & Dick, The Dalles, Or., for
plaintiffs.

Norman Sepenuk, Asst. U. S. Atty.,
Sidney I. Lezak, U. S. Atty., District of
Oregon, Portland, Or., for defendant.

OPINION

KILKENNY, District Judge:

Plaintiffs charge defendant with negligence under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Plaintiff, Minnie McClaskey, is the owner and plaintiffs, Roy Grant and Nina Grant, are the lessees of the Arlington Motel & Trailer Court, located in Arlington, Oregon. Prior to December, 1964, defendant, by and through the United States Army Corps of Engineers, was engaged in the construction of the John Day Lock & Dam Project, on the Columbia River, and in the relocation and alteration of a portion of the city of Arlington. Involved in this litigation is the relocation and alteration of the Condon Branch of the Union Pacific Railroad Company; portions of Oregon State Highway No. 19, now Locust Street in the city of Arlington; and the lining and relocation of a portion of China Creek Canal in the said city. China Creek, as the same runs in a northerly and southerly direction through the city of Arlington, is generally dry, but does discharge rather heavy volumes of water during storm run-offs. Before the change, the channel was in the form of a rough vee in natural earth. Oregon State Highway No. 19 crossed the channel on an earth fill. A five by six foot concrete box culvert, 45 feet in length ran under this highway. The railroad in question ran along the east side of the channel between the Arlington Motel property and the China Creek

channel. During the relocation, it was necessary to construct what is referred to as the "Condon Branch Shoofly,"[1] to be ultimately removed when a permanent location of the railroad facility was accomplished. It was part of defendant's responsibility to provide for the relocation of the channel and the Shoofly.

After relocation the creek channel was a U-shaped concrete lined structure, 50 feet wide and ranging from 15 to approximately 23 feet deep. The Shoofly crossed the channel on a temporary earth and rock filled plug, 220 feet downstream from the bridge. Drainage through the Shoofly plug was provided by a six foot diameter corrugated metal pipe.

Plaintiffs' property is located upstream from the highway street crossing. Prior to the relocation and alteration, drainage from the motel property to the China Creek channel was provided by an 18 inch culvert under the Condon Branch Railroad. After relocation, a 24 inch by 60 foot corrugated metal pipe culvert was installed in approximately the same location.

A flood of record, or near record, proportions occurred on December 22, 1964. The flood was the result of a prior snowfall and the combination of a Chinook[2] and heavy rains. Defendant's personnel, recognizing the proportions of the flood and anticipating heavy damage to the downtown Arlington district employed a bulldozer to pull the tracks off the Shoofly and doze a ditch about six to eight feet deep in order to get the water started so as to cut its own channel through the fill. The six foot diameter pipe was either plugged or of insufficient size to carry the water. Plaintiffs charge defendant with negligence in the particulars set forth in the footnote.[3] Defendant denies the charges of negligence and proximate causation and affirmatively claims immunity under a theory of an Act of God, and the provisions of 33 U.S.C. § 702c.

## NEGLIGENCE

■ The record supports a finding that Chinook winds, heavy rains and melting snow, combining to create conditions resulting in heavy floods, are not uncommon in this sector of Eastern Oregon. For that matter, the Court could probably take judicial notice of the fact that an unusual flood of the general type here described may occur somewhere in Gilliam, Morrow or Umatilla Counties each year during the winter season. Consequently, I have no difficulty in finding that defendant could, and should, have anticipated a flood of the type here encountered. Statistically, such a heavy flood might occur only every four to five years. Nevertheless, I have no difficulty in finding that defendant was negligent in each of the particulars as charged and that each was a proximate cause of the resulting damage to the plaintiffs' property.

---

1. A temporary facility.

2. Warm winds.

3. "1. Defendant negligently constructed and maintained a rock and dirt fill in the China Creek concrete channel constructed by defendant for the Union Pacific Railway Company's crossing of said China Creek concrete channel instead of constructing a timber trestle or other similar type structure for said crossing and thus unnecessarily obstruct the flow of water through said channel.

"2. Defendant failed to install a flap gate over the end of the 24″ corrugated metal pipe that was installed by defendant in said China Creek channel near the location of plaintiffs' premises although having previously been warned that a failure to do so would result in water backing up through said 24″ corrugated metal pipe from said China Creek channel onto the premises of the plaintiffs.

"3. In failing to remove said rock and dirt fill on December 22, 1964, after having been warned that said fill would block the passage of the water that was anticipated to flow through said China Creek concrete channel on said date and thus cause said water to overflow on the premises of the plaintiffs and others.

"4. In failing to place said 72″ culvert in a proper location in said fill so that water flowing in said China Creek channel could freely flow through said 72″ culvert."

## ACT OF GOD

Winter floods of near equal proportions, a common occurrence in the general area, cannot be viewed as an Act of God. An Act of God, excusing failure to perform a duty, excludes all circumstances produced by a human agency. Hubbard v. Olsen-Roe Transfer Co., 110 Or. 618, 224 P. 636 (1924); Miami Quarry Co. v. Seaborg Packing Co., 103 Or. 362, 204 P. 492 (1922); Dippold v. Cathlamet Timber Co., 111 Or. 199, 225 P. 202 (1924); Silver Falls Timber Co. v. Eastern & Western Lumber Co., 149 Or. 126, 40 P.2d 703 (1935). The same principles are applied on a *viz major* in Maritime Law. Southern Pacific Co. v. Schuyler, 135 F. 1015 (9th Cir. 1905); Parker v. Womack, 37 Cal. 2d 116, 230 P.2d 823 (1951); St. Ioannis Shipping Corp. v. Zidell Explorations, Inc., 222 F.Supp. 299, 305 (D. Or. 1963). The December 22nd flood was not of such major proportions as to excuse the want of due care of defendant.

## EFFECT OF 33 U.S.C. § 702c [4]

Defendant argues that this section creates, in its favor, a shield of immunity as soon as the evidence disclosed that a flood was a cause of the damage. The section under which defendant claims immunity was enacted by the Congress on May 15, 1928,[5] and remains unamended. The Federal Tort Claims Act, under which plaintiffs prosecute this action, was not enacted until June 25, 1948.[6] The immunity reserved in the 1928 legislation is not even mentioned in the 1948 Act. Consequently, if this was a matter of first impression, I would be inclined to hold that the latter legislation controlled the former and that the 1928 Act was repealed, by implication, to permit enforcement of all the rights created under the Tort Claims Act.

Be that as it may, our exceptionally able and distinguished Judge, James Al-

ger Fee, now deceased, held, in Clark v. United States, 109 F.Supp. 213 (D. Or. 1952), aff'd. 218 F.2d 446 (9th Cir. 1954), that the Tort Claims Act did not remove the shield. Since Judge Fee held there was no negligence on the part of the Government, it could well be argued that his dissertation on the immunity of § 702b was pure dicta. However, his logic is followed and approved by the Court of Appeals in Stover v. United States, 332 F.2d 204 (9th Cir. 1964), cert. denied 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964). There, the Court of Appeals points to the dicta in *Clark,* but goes on to say that it was *good* dicta. As we judges advance up the ladder of judicial divinity, I assume that we reach a plateau where we can distinguish between good and bad dicta. As yet, I have not reached that intellectual haven, but will accept the dicta in *Clark* as *good.* If additional support is required, that is supplied by National Mfg. Co. v. United States, 210 F.2d 263 (8th Cir. 1954). These decisions are now fortified by the fact that the Congress has met on many occasions subsequent to the decisional dates, and has made no effort to overcome the effect of the decisions, nor to in any way amend or clarify the legislation. These decisions now stand as correct interpretations of the statutes in question. Plaintiffs' reliance on Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., 126 F.Supp. 406 (N.D. Cal. 1954) is misplaced for the following reasons: (1) that case involved the Government's construction and use of a temporary cofferdam to artificially impound the waters of the American River during the construction of Folsom Dam. The cofferdam failed and the impounded waters—as distinguished from flood waters—damaged the plaintiff's construction site; (2) the decision was an interlocutory ruling denying a motion for a summary judgment; (3) later the

---

\* \* \* \* \*

4. "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place: \* \* \*."

\* \* \* \* \* \* \*

5. 45 Stat. 535.

6. 62 Stat. 933.

plaintiff voluntarily dismissed the case against the United States; and (4) the man-made flood referred to in *Atkinson* was not a natural flood, with which we are here concerned. *Atkinson* is a weak straw on which to lean.

Finally, the decisions in *National Manufacturing, Stover* and *Clark* fully support the Government's theory that § 702c exempts the Government, even if the Government's negligence was a contributing cause in connection with natural forces.

## ALTERNATIVE FINDING

Anticipating an appeal, and that the Court of Appeals might distinguish this case from those previously decided, thus refusing immunity to the defendant, I shall proceed to fix the sums of damages to be awarded. I would award to the plaintiff, Minnie McClaskey, the sum of $5,893.07, and to plaintiffs, Roy Grant and Nina Grant, the sum of $2,297.33, a total in favor of all plaintiffs of $8,190.40.

This opinion shall serve as my findings and conclusions. A judgment of dismissal shall be entered in conformity herewith.