# NORTHWESTERN MUTUAL INSURANCE
## COMPANY, *Respondent,*
### *v.*
## PETERSON, *Appellant.*
## (No. L-3651, SC P-2497)

572 P2d 1023

Charles R. Cater, of Cater & Johnson, La Grande, argued the cause and filed briefs for appellant.

I. Franklin Hunsaker, of Bullivant, Wright, Leddy, Johnson, Pendergrass & Hoffman, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, Howell and Linde, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE,** Justice Pro Tempore.

This is a subrogation action which grew out of a claim paid on a builder's risk insurance policy. Plaintiff insurance company paid a claim for damages suffered when a church building under construction in Baker collapsed during a windstorm. Plaintiff sued defendant, alleging that had it not been for defendant's negligence in constructing the building, the accident would not have occurred. Defendant's position was that the church was blown down by a wind of such force as to constitute an act of God, thereby freeing him from responsibility. The trial judge, however, refused to allow defendant's "act of God" defense to be considered by the jury. The jury returned a verdict for plaintiff, and defendant appeals. We reverse.

In April, 1970, the First Church of God in Baker, Oregon, began the construction of a new church building. Plaintiff issued a builder's risk policy to the church which, *inter alia,* insured the church against "direct loss by windstorm."

Defendant, a residential building contractor and member of the church congregation, was chairman of the church's building committee. Defendant drew the plans and specifications for the new structure, ordered the materials and supervised the construction.

Defendant failed to secure a city building permit as required by Baker ordinances until two months after the construction began. He also failed to have the plans certified by a qualified professional architect or engineer as required by ORS 460.230. As a result, the city building inspector posted "stop work" orders at the church construction site in July, 1971. In spite of the stop work orders, however, construction continued until the roof collapsed in January, 1972.

The church filed a proof of loss with plaintiff. Plaintiff paid $11,994.86 on the claim. Plaintiff then

[ 775 ]

sued defendant, alleging negligence in the design and construction of the church.

At trial, each side presented evidence supporting its theory of the cause of the collapse of the roof. The gist of plaintiff's testimony was that the design, plans and construction of the roof did not meet minimum standards of acceptable construction and that, had the roof been properly constructed, it would not have collapsed during the windstorm. Plaintiff further contended that defendant was negligent as a matter of law in violating ORS 460.230.[1] Defendant admittedly had not complied with the statute.

Defendant raised the affirmative defense of "act of God." Seven defense witnesses, all long-time local residents, testified that it was the strongest wind they had ever seen in the county. One witness testified that the wind blew down a concrete block wall six inches thick. The wall was nine or ten blocks from the church.

1. "Act of God" defense.

After hearing this testimony, the trial judge refused to allow the jury to consider the "act of God" defense or to instruct the jury that an "act of God" could excuse defendant from liability. This refusal is defendant's first assignment of error.[2]

■ An "act of God" is defined as a natural occurrence of "extraordinary" and "unprecedented proportions":

" '* * * not foreshadowed by the usual course of nature, and whose magnitude and destructiveness could not have been anticipated or provided against by the

---

[1]ORS 460.230. In order to safeguard life, health and property, all drawings and plans defining the framing systems, shoring systems and foundations for structures of public assembly shall be certified by a qualified professional engineer or qualified architect. The design of the certified structure of public assembly shall provide for resistance to lateral forces, including wind and earthquakes, as well as gravity loads, in accordance with accepted engineering practice and governing building codes. The design shall be accompanied by supporting lateral force calculations.

[2]Plaintiff does not dispute that defendant's requested instruction accurately stated the law.

exercise of ordinary foresight'." *Schweiger v. Solbeck,* 191 Or 454, 464, 230 P2d 195 (1951).

■■ In order for the "act of God" defense to apply, the natural event must be the sole proximate cause of the injury complained of: "An act of God, excusing failure to perform a duty, excludes all circumstances produced by a human agency." *McClaskey v. U.S.,* 261 F Supp 912, 914 (D Or 1966), *aff'd,* 386 F2d 807 (9th Cir 1967).

Plaintiff argues initially that the evidence presented by defendant falls short of an assertion of a natural force of extraordinary and unprecedented proportions. Plaintiff points to *Schweiger v. Solbeck, supra,* where the court disallowed the "act of God" defense. However, the weather condition at issue in *Schweiger* was a winter rainfall which the evidence indicated was heavy but not extraordinary or unprecedented. 191 Or at 461-62. Here, however, seven witnesses testified the wind was the strongest they had ever seen in the county.

This testimony creates a jury question as to whether the severity of the weather rises to the level of an "act of God." In *Mazurek v. Rajnus,* 253 Or 555, 456 P2d 83 (1969), we stated:

> "An 'act of God' which will excuse a defendant from liability has been defined in varying degrees of unexpectedness. (Footnote omitted). Whether the occurrence comes within the definition is a question of fact for the jury. In the present case it was for the jury to decide whether the 'freak and sudden gust of wind' was an unforeseeable occurrence." 253 Or at 558.

Plaintiff also relies upon the "sole cause" requirement to support the trial judge's refusal to submit the "act of God" defense to the jury. Plaintiff argues that because there is evidence of defendant's negligence in design and construction of the church, the force of the wind cannot be the *sole* cause of damage to the church, and therefore the "act of God" defense is not available to defendant.

The answer, of course, is that the wind *may or may not* have been the "sole" cause. It may be that, although the wind was strong, the building would have withstood its pressure if the construction had been sound. On the other hand, the wind might have blown down even a properly-erected building. The question was one of fact, for the jury. *Mazurek v. Rajnus, supra. See also Old Colony Ins. Co. v. Reynolds,* 256 SW2d 362 (Ky 1953) (whether wind or faulty construction caused collapse of warehouse was question for jury).

## 2. *Subrogation.*

Defendant also assigns as error the trial judge's failure to grant a directed verdict on his behalf on the ground that, inasmuch as negligence was not a risk covered by the policy, plaintiff's payment of the church's claim when plaintiff believed the loss was caused by defendant's negligence and not by a windstorm meant plaintiff acted as a volunteer.

■■ Defendant's argument is premised on the "volunteer rule," which would deny subrogation to a stranger or interloper who confers a benefit. *See Hult v. Ebinger,* 222 Or 169, 352 P2d 583 (1960). We apply the rule narrowly, giving preference to an expanding and well recognized principle of subrogation—that an insurer has the right to recover for damages it has been called upon to pay to an insured under its policy.

> "[T]he right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries." (citation omitted).

> "Subrogation 'is a remedy which is highly favored. The courts are inclined to expand rather than to restrict the principle. Although formerly the right was limited to transactions between principals and sureties, it is now

broad and expansive, and has a very liberal application
* * * the principle being modified to meet the circumstances of the individual case.' " *United Pac. Ins. Co. v. Schetky Equip. Co.,* 217 Or 422, 434, 342 P2d 766 (1959). *See also* 16 Couch on Insurance 2d § 61:4 at 239 (2d ed 1966).

We find no difficulty in approving subrogation here. Plaintiff's policy promised to pay if wind blew down the structure. The promise was not qualified by excluding situations in which the wind would not have been so destructive but for some other circumstance. Wind blew down the structure; plaintiff was obligated to pay.

### 3. *Testimony of Witness.*

Defendant separately assigns as error the exclusion of testimony by witness Francis Clarke concerning the collapse of a concrete block wall in the same wind which caused the collapse of the church. The trial court excluded the testimony as "cumulative."

Clarke's testimony was in three parts: (1) direct testimony as to the extent of damage to the wall; (2) opinion testimony as to the cause of damage to the wall; and (3) testimony that the insurance company which he represented paid a wind damage claim for the wall.

■ (1) Clarke's testimony concerning the degree of damage to the wall was relevant and material to the issue of the force generated by the wind. Only one other witness had testified as to the wall damage. On this point, Clarke's testimony could not have been cumulative under ORS 45.530, which provides:

"The court may exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness and as effective for the extraction of the truth as may be; but subject to this rule, the parties may put such legal and pertinent questions as they see fit. The court, however, may stop the production of further evidence, upon any particular point, when the evidence upon it is already so full as to preclude reasonable doubt."

This portion of Clarke's testimony was improperly excluded.

■ (2) Defendant also attempted to offer Clarke's opinion concerning the cause of the damage. Clarke had not witnessed the incident. Defendant laid no foundation showing Clarke was qualified to give such an opinion.

This evidence was properly excluded. *See e.g., Yundt v. D & D Bowl, Inc.,* 259 Or 247, 486 P2d 553 (1971). *See also* ORS 44.060.

■ (3) Clarke's testimony concerning payment of a wind damage claim on the fallen wall was irrelevant and properly excluded.

4. *Jury Instructions.*

Finally, the defendant assigns as error the giving of certain instructions requested by the plaintiff.

■ The first challenged instruction concerned the plaintiff's right to subrogation. The jury was instructed:

"This action has been brought on behalf of an insurance company. This is what is called a subrogation action on the part of the insurance company, which insured the First Church of God against damages caused to it's property. Since the plaintiff-insurance company paid $11,994.80 to the church in connection with such damage, the plaintiff-insurance company in return for such payment now stands in the shoes of the church and has the same rights and liabilities, if any, of the church to the extent of the amount paid. If you determine that the defendant is responsible for this loss, he cannot escape liability or reduce liability simply because the church happened to have insurance which covered the loss. Accordingly, in this case with respect to all questions relating to the liability of the defendant for the losses claimed, you should ignore and I instruct you to ignore entirely the fact that there is an insurance company bringing this action as the plaintiff and treat such questions as though the insurance company was not in the case at all."

[ 780 ]

Defendant's principal objection to this instruction is that plaintiff was not entitled to subrogation. This contention has been dealt with elsewhere. Defendant also objects that the instruction demonstrates "excessive solicitude for the plaintiff as an insurance company." Suffice it to say that we do not agree.

Defendant next objects to an instruction concerning negligence per se given by the court as follows:

> "I would instruct you that if the defendant Carl E. Peterson violated the provisions of ORS 460.230 he would be negligent as a matter of law."

ORS 460.230[3] contains two different requirements: The first sentence requires certain drawings and plans to be certified by a qualified professional engineer or architect. The second sentence speaks to the design of the building itself, requiring that it contain certain provisions. Failure to comply with the first part of the statute is not negligence. Failure to comply cannot supply the fault for the collapse of the building; only defendant's negligence in actually constructing the building can supply that element. Failure to comply with the second part of the statute might be negligence, but the jury was not instructed as to the distinction. Giving the instruction was error. *See Smith v. Portland Traction Co.,* 226 Or 221, 225-226, 359 P2d 899 (1961); *compare Landolt v. The Flame, Inc.,* 261 Or 243, 492 P2d 785 (1972).

Defendant next objects to the giving of the following instruction:

> "I would instruct you that all drawings and plans defining the framing systems, shoring systems, [and] foundations for structures of worship shall be certified by a * * * professional engineer or qualified architect, and the failure to have such plans certified is negligence in and of itself."

This, in fact, is an instruction concerning the substance of ORS 460.230, which had been referred to in the previous instruction, and is erroneous for the

---

[3] *See* fn 1, pp 2-3, *infra.*

same reason expressed concerning the previous instruction.

Defendant next objects to the giving of the following instruction:

> "If you decide the question in favor of the plaintiff on the question of liability, and if you decide that the plaintiff suffered damages as a result, then you must decide how much. In this regard the plaintiff is entitled to recover as damages the difference in the value of the church structure immediately before the damages and immediately after. And it is that difference which is the measure of damages."

Defendant maintains this instruction set a false measure of damages. The jury was also instructed, however, that plaintiff:

> "* * * now stands in the shoes of the church and has the same rights and liabilities, if any, of the church *to the extend ot the amount paid.*" (Emphasis added).

The jury's verdict was for an amount equal to the amount paid by plaintiff on the claim, which amount was in turn the cost of repairs to the church. The cost of repairs may, under certain circumstances, be the proper measure of diminution of value. *Johnson v. Northwest Acceptance Corp.,* 259 Or 1, 11, 485 P2d 12 (1971). A single instruction advising the jury that they could award to the plaintiff the amount of diminution in value of the church or the amount plaintiff had paid to its claimant, whichever was the less, would have been better. However, when the instructions are viewed as a whole, it is clear that the jury would have understood the court to be instructing them to this effect. The evidence, in any event, showed the two amounts to be the same. There was no error.

Defendant also challenges the trial court's instruction on evidence of wind. We do not reach this question because, on a retrial, the issues posed by the "act of God" defense will require completely different instructions.

Reversed and remanded.