Submitted on record and briefs March 25, affirmed November 14, 1985

# MOFFET et ux,
*Respondents - cross-appellants,*

*v.*

# GINTHER et al,
*Defendants,*
# KINGSWOOD DEVELOPMENT CO.,
*Appellant - cross-respondent.*

(A7811-19000; CA A32981)

709 P2d 714

Robert L. Dressler and Dressler & Granata, Portland, submitted the brief for appellant - cross-respondent.

John Chally and Bouneff, Chally & Marshall, Portland, submitted the brief for respondents - cross-appellants.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Defendant Kingswood Development Co. (defendant) appeals from a judgment awarding damages for its negligent failure to design and construct a drainage system to prevent water from collecting under the house that it built for plaintiffs. Plaintiffs cross-appeal, claiming that the trial court erred in allowing defendant to amend its pleadings to add an affirmative defense during the trial. We affirm.

Defendant sold a lot to plaintiffs in 1976 and agreed to build a house on it. Throughout construction plaintiffs periodically inspected the house. They were dissatisfied with much of defendant's workmanship and initiated negotiations with defendant that culminated in reduction of the price of the house by $1,500 and the execution of an addendum to the purchase money agreement that stated, in part:

"Purchaser has inspected the home and accepts the home 'as is.' Any modifications or changes to the premises will be the responsibility of the purchaser."

Plaintiffs moved into the house in June, 1977. In December, 1977, the crawl space flooded. Plaintiffs notified defendant of the problem, but defendant did nothing. Plaintiffs sued. The complaint contained two causes of action: negligence and breach of the implied warranty of habitability. The jury found for plaintiffs on both claims and awarded damages at $11,400. The court entered judgment against defendant for that amount, plus costs.

Defendant submits 13 assignments of error, which the parties divide into three groups. Defendant summarizes its argument on the first ten assignments as follows:

"Defendant contends that there was insufficient evidence on the question of negligence and damages for these questions to be submitted to the jury. Defendant further contends that allowing evidence of damages as of the date of trial, 1981, to be presented to the jury and then permitting the recall of witnesses to 'back up' that evidence to June 1976, the date of the purchase, was prejudicial error. The prejudice was compounded by the refusal of the court to admonish the jury and caution them to disregard evidence of 1981 costs."

Assignments 11 and 12 relate to the trial court's refusal to grant defendant's motion for a directed verdict on

plaintiffs' second cause of action, which alleges that defendant breached an implied warranty of habitability and of reasonably workmanlike construction. Assignment 13 relates to the trial court's refusal to instruct the jury that defendant's sale of the house in an "as is" condition excluded any implied warranty of habitability.[1]

■ There was sufficient evidence to submit the negligence claim to the jury. Jallo, defendant's employe, who supervised the building of plaintiffs' house, testified that sump pumps had been installed in houses close to plaintiffs' in the same development. His only explanation for defendant's failure to install a sump pump in plaintiffs' house was that defendant had no reason to suspect drainage problems on that lot. Defendant knew, however, that the Oregon Department of Veterans' Affairs (the lender financing plaintiffs' home) required the lot to have a "positive drainage away from foundation." Jallo gave only two examples of a "positive drainage system": a gravity-flow system, which he admitted was unavailable on plaintiffs' lot, and a sump pump.

Defendant also argues that no witness testified concerning prevailing standards of construction. However, Jallo admitted that it was not "approved practice" to build houses with the kinds of defects that appeared in plaintiffs'. He also admitted that defendant had itself employed a higher standard of construction in building on other lots, including installation of a sump pump in a house just down the street from plaintiffs'.

■ Also, there was sufficient evidence to submit the question of plaintiffs' damages to the jury. The court recognized during the course of the proceeding that it had mistakenly admitted evidence of the cost of repair as of the time of trial and that it should have required that any such testimony relate to the time the house was being built in 1976. The court then allowed plaintiffs to recall witnesses to establish what the repair cost would have been in 1976. Defendant concedes that the jury could consider cost of repair in 1976 as a measure of damages, *see Northwestern Mutual Insurance Co. v. Peterson,* 280 Or 773, 572 P2d 1023 (1977), and that the trial

---

[1] Defendant has not argued or asserted that the "as is" clause has any impact on plaintiffs' negligence claim.

court properly instructed the jury to that effect. Defendant contends only that the testimony concerning what the cost of repair would have been in 1981 was prejudicial and that the testimony concerning cost of repair in 1976 was not competent. Evidential error is not presumed to be prejudical, OEC 103, and defendant has not presented any persuasive reason to conclude that it was prejudiced by the evidence of 1981 repair costs. Whether the evidence concerning costs of repair in 1976 was competent was for the court to decide. It decided that it was, over defendant's objection. We are not convinced from our examination of the record and defendant's argument that the court erred.

The final issue raised in the first ten assignments is whether the court should have expressly instructed the jury to disregard evidence concerning what the costs of repair would have been in 1981. We conclude that the instruction actually given was adequate:

> "If you determine that plaintiffs are entitled to recover damages, the appropriate measure of damages is the amount of money that is equal to the differences, if any, between the purchase price of the property which has been agreed upon as $50,000, and the fair market value of the property with the alleged defective drainage system as of June, 1976.

> "In determining fair market value in June, 1976, you should consider what a knowing and willing buyer would pay and what a knowing and willing seller would accept with the knowledge of the alleged drainage defect. Cost of repair is an element you may consider in determining this fair market value. In other words, what it would have cost to repair the alleged drainage defect at the time the home was purchased in June, 1976, may be considered by you as evidence of diminished fair market value."

Because the jury found for plaintiffs on both the negligence and implied warranty causes of action and returned an unsegregated verdict, we need not reach assignments of error 11, 12 and 13. Those assignments, as briefed and argued to this court, relate only to the implied warranty claims. The judgment for plaintiffs is sustainable on the basis of the jury's verdict on the negligence claim alone.

Plaintiffs' cross-appeal asserts that the court erred in allowing defendant to add an affirmative defense based on the

"as is" clause during the trial. Our resolution of defendant's appeal renders the issue moot.

Affirmed.